Commonwealth *v.* Claitt, Appellant.

Argued May 1, 1973. Before EAGEN, O'BRIEN, ROB-ERTS, POMEROY, NIX and MANDERINO, JJ.

*Joseph N. Bongiovanni, III,* with him *Speese and Kephart,* for appellant.

*Norris E. Gelman,* Assistant District Attorney, with him *Milton M. Stein,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE O'BRIEN, November 26, 1973:

Ellis Bogen, a druggist, was shot and killed during a robbery of his drug store at 2601 West Columbia Avenue, Philadelphia, on December 18, 1969. Appellant, Gerald J. Claitt, was arrested and brought to trial for his participation in this murder and he was convicted by a jury of burglary, robbery and murder in the first degree. Post-trial motions were denied and appellant was sentenced to life imprisonment. This appeal followed.

The testimony at appellant's trial revealed the following facts: Appellant, armed with a .22 caliber revolver, entered the drug store first, followed by one Howard Kennedy, who was armed with a sawed-off shotgun. During the course of the robbery, Bogen was shot by Kennedy. The two men were seen fleeing from the store by a fifteen-year-old girl who worked at a dress shop in the vicinity. Appellant was also identified by William Levin, an employee of the drug store, who viewed appellant for some five to ten minutes during the crime.

An accomplice, Ricky Collins, who was present at the planning of the robbery and who played an active part in the robbery, testified as to appellant's participation in the robbery-murder. In addition, appellant gave the police a formal written statement in which he admitted his participation in the crime. Appellant had sought to suppress this statement and the oral statement that preceded it, but appellant's motion to suppress was denied after a pretrial hearing.

Appellant's first allegation of error concerns what he alleges to be the prosecuting attorney's improper reference to the oral statement which appellant contends was, in fact, suppressed at the pretrial hearing. However, our examination of the record indicates that, although the court originally indicated an intention to suppress the oral statement, while admitting the written statement, he actually held the entire matter under advisement until he ultimately concluded, after both sides had submitted briefs, that both the oral statement and the written statement were admissible. Since appellant does not contest the correctness of the suppression court's decision that the written statement was admissible, and since, despite the contentions of appellant, either both statements were admissible or both statements were inadmissible [see *Harrison v. United States*, 392 U.S. 219 (1968)], we can find no merit in appellant's allegation of error.

Appellant's next allegation of error concerns the Commonwealth's use of a certain photograph in its cross-examination of Johnny Lee Sanders, who was called by the defense as an alibi witness. Sanders had been in the apartment of one Sandra Hightower from which the five robbers left and to which they returned. Sanders testified that appellant was in his presence while he was playing cards and that appellant never left the apartment during the time of the robbery and the killing of Ellis Bogen. When the five who were ultimately thought to be involved were first rounded up with others and taken to the Police Administration Building for questioning, the police took Polaroid snapshots of all of them. This was a necessary procedure because so many members of the gang were known only by their nicknames that, when talking with a fellow gang member, the police could not be sure of the correct name of the person to whom the member was referring. The assistant district attorney had nineteen

of these photographs marked for identification and used some of them in her cross-examination at trial.

At the time of the original arrests, Sanders had told the police that he had heard a certain five men planning the robbery. One of these men Sanders had identified as a man named "Kadah" and he had identified photograph C-56 as a photograph of "Kadah." At appellant's trial, when shown the same photograph on cross-examination, Sanders admitted that the photograph was of appellant, but claimed that appellant was not the man known as "Kadah."

Appellant argues that Sanders' identification of the photograph was constitutionally infirm under *United States v. Wade*, 388 U.S. 218 (1967), and *Commonwealth v. Whiting*, 439 Pa. 205, 266 A. 2d 738 (1970), and that it was error to permit the Commonwealth to refer to this identification in its cross-examination of Sanders. However, in our opinion, the cases upon which appellant relies are inapplicable. Sanders was not asked originally to choose which photograph of a group of photographs shown to him depicted a man whom he had heard helping to plan the crime. Instead, he was asked to provide the names by which the men, depicted in the Polaroid photographs taken previously, were know to him. When the photograph was again shown to Sanders on cross-examination, it was to test his credibility. It was for the jury to determine whether C-56 was the same photograph which Sanders had previously identified as "Kadah" and now acknowledged to be appellant but not "Kadah." The use of the photograph in this way did not violate the constitutional rights of appellant.

Appellant next argues that the trial court erred in allowing a photograph of the deceased to be entered into evidence, and to be used by the jury in their deliberations. As we have said many times, the admission of photographs is left to the discretion of the trial judge

and will not be reversed unless he abuses that discretion. See *Commonwealth v. Wilson*, 431 Pa. 21, 244 A. 2d 734 (1968). In the facts of the instant case, we find no abuse of discretion. The photographs of the deceased merely showed the deceased with a sheet covering all but his head. The picture was neither gruesome nor gory so as to inflame the prejudice of the jurors. While the jury may have had little need of the photograph in their deliberations, it was not error to allow them to use it.

Appellant also argues that the ninety-nine shotgun pellets removed from the deceased's body should not have been admitted into evidence. According to appellant, these pellets had an unfairly inflammatory and prejudicial effect on the minds of the jurors. However, the pellets, as the instruments of death, were certainly relevant to the case, as they corroborated the testimony of the Commonwealth's witnesses as to the facts of the killing. We find no error in the court's decision allowing them to be admitted.

Appellant finally alleges error in the selection of the jury panel. The record clearly establishes that these allegations are unsupported by the record.

Judgment of sentence affirmed.

Mr. Justice ROBERTS concurred in the result.

Mr. Chief Justice JONES took no part in the consideration or decision of this case.

---

CONCURRING OPINION BY MR. JUSTICE POMEROY:

I concur in the decision of the Court. I deem it appropriate to add, however, that the Supreme Court of the United States has recently held that, "The Sixth Amendment does not grant the right to counsel at photographic displays conducted by the Government for the purpose of allowing a witness to attempt an identification of the offender." *United States v. Ash*, 413 U.S. 300, 37 L. Ed. 2d 619 (1973). Insofar as our opinion in

*Commonwealth v. Whiting,* 439 Pa. 205, 266 A. 2d 738 (1970), held to the contrary, therefore, it can no longer be considered to be an accurate statement of federal constitutional law. In the context of the present case I see no necessity to determine whether the result in *Whiting* is sustainable under Article I, Section 9 of the Pennsylvania Constitution, a question that has not been presented to us.

Mr. Justice EAGEN joins in this concurring opinion.

---

CONCURRING OPINION BY MR. JUSTICE NIX:

In my view, the rationale of our decision in *Commonwealth v. Whiting,* 439 Pa. 205, 266 A. 2d 738 (1970), *cert. denied,* 400 U.S. 919 (1971), applies to the photographic line-up in this case. However, since that line-up preceded the *Whiting* decision, I would not hold that appellant had a right to counsel and I concur in the result reached by the majority solely on that basis. See, *Commonwealth v. Smith,* 452 Pa. 1, 304 A. 2d 456 (1973).

In *Whiting,* we held that a suspect who is in custody has a right to have counsel present when the police exhibit his photograph to a potential witness in hopes of obtaining an identification. In this case, appellant was in custody at the time the police exhibited his photograph to Sanders, and the purpose of exhibiting that photograph was to determine whom Sanders could identify as a participant in the crime being investigated—nothing more or less. The majority suggests that the protections given by *Whiting* are inapplicable because Sanders knew the perpetrator by a nickname.

I must respectfully disagree. The protection offered by *Whiting* is intended to guard against unnecessarily suggestive pretrial confrontations. Whenever police investigation has centered upon an individual to the extent of bringing him into custody, and the police intend

thereafter to obtain an identification from a potential witness, the danger of suggestion is present. We should not entertain fine questions concerning the strength of the potential witness' identification in each case; rather we have established a broad rule precisely to eliminate the need for such inquiries. The fact that a witness is very sure of the pretrial identification he is called upon to make, *even to the point of knowing the perpetrator's name (or nickname)* does not render *Whiting* inapplicable. Thus, I cannot join in the majority opinion even though I concur in the result.