353 A.2d 844

**COMMONWEALTH of Pennsylvania**

v.

**Richard COX, Appellant (two cases).**

Supreme Court of Pennsylvania.

Argued Nov. 18, 1975.

Decided March 17, 1976.

Duane, Morris & Heckscher, Martin A. Heckscher, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Gaele Barthold, Philadelphia, for appellee.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

NIX, Justice.

Appellant, Richard Cox, after a trial without a jury, was found guilty of murder of the second degree along with other related charges which are not the subject of this appeal. Post-trial motions were filed, argued and denied and this direct appeal followed.[1]

The first assignment of error is that the evidence was insufficient to sustain the murder conviction. In determining whether the evidence presented is sufficient to sustain the conviction, the test is, whether accepting as true all of the evidence of the Commonwealth and all reasonable inferences arising therefrom, upon which if believed, a finder of fact could properly have based its verdict, was sufficient in law to prove the elements of the crime in question beyond a reasonable doubt. *Commonwealth v. Paquette,* 451 Pa. 250, 253, 301 A.2d 837, 838–39 (1973); *Commonwealth v. Eiland,* 450 Pa. 566, 569, 301 A.2d 651, 652 (1973); *Commonwealth v. Williams,* 450 Pa. 327, 329, 301 A.2d 867, 869 (1973); *Commonwealth v. Oates,* 448 Pa. 486, 489, 295 A.2d 337, 338 (1972).

Shortly after 2:00 A.M. on December 22, 1973, Ernest Pollard was in a bar located on the southwest corner of 19th and Parrish Streets in the City of Philadelphia. The bar was owned by his brother, Ralph Pollard. It was after closing time and Ernest was waiting for Ralph to come down from upstairs in order to secure the premises for the night. Johnny Wilcox, accompanied by the appellant, Richard Cox, and a third party identified as Wingate, approached the bar. Wilcox entered while the other two waited outside. Some angry words were ex-

---

1. Jurisdiction for this appeal is pursuant to Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, No. 223, art. II, § 202(1), 17 P.S. § 211.202(1).

changed between Ernest and Wilcox, and Wilcox was asked to leave since the bar was closed. Wilcox and the two men with him walked across the street and stood on the steps of a doorway directly in front of the door to the bar. After a few minutes, Ernest crossed the street to speak with the three of them. As he approached, he heard Wilcox say something to the effect of jumping him and one of the other men in the group replied, "No, he is too big." Once again, Ernest and Wilcox exchanged words and Ernest returned to the bar. From the bar, through a full-length glass door, Ernest observed the three men run up Nineteenth Street. In about ten minutes he saw the trio return and resume their position on the same steps.

Minutes later, as Ernest and Ralph left the bar and began to lock the door, Ernest saw appellant, Wilcox and Wingate quickly descend the steps on which they were standing. Although they came in unison, one was slightly ahead of the others. Ralph shouted, "They have a gun", and, as he and Ernest turned to re-enter the bar, there was a loud noise and a "blast" from the direction of the appellant and his companions. Ernest was shot in the back of his left shoulder and survived. His brother, Ralph, however, was shot in the back and was pronounced dead on arrival at the hospital. There was no direct evidence as to which of the three individuals actually fired the shots, nor did Ernest see the weapon.

■ The thrust of the challenge to the sufficiency of the evidence is appellant's assertion that the testimony merely shows that appellant was present, along with others, during the commission of the crime and that he fled with them after the shooting. He argues that the missing element is the absence of proof of shared criminal intent. This argument obviously rests upon the assumption that appellant did not, in fact, fire the fatal shot and thus criminal responsibility would have to be predicated upon a theory of vicarious liability. While the evidence

failed to establish which of the three attackers fired the shots causing the death and thus, in fact, appellant may have been the perpetrator, we agree such a finding would necessarily be based on conjecture and therefore could not be accepted. *Commonwealth v. Simpson*, 436 Pa. 459, 260 A.2d 751 (1970); *Commonwealth v. Bausewine*, 354 Pa. 35, 46 A.2d 491 (1946). We accept appellant's assertion that the Commonwealth was required to establish that he was an accomplice or coconspirator to support the conviction. We are satisfied that the Commonwealth met this burden.

> "All theories that are recognized under our law to hold one responsible for the criminal acts of another require the existence of a shared criminal intent. It is well settled that the nexus which renders all members of a criminal conspiracy responsible for the acts of any of its members is the unlawful agreement. *Commonwealth v. Yobbagy*, 410 Pa. 172, 177, 188 A.2d 750, 752 (1963); *Commonwealth v. Neff*, 407 Pa. 1, 7, 179 A.2d 630, 632 (1962); *Commonwealth v. Kirk*, 340 Pa. 346, 17 A.2d 195 (1941), aff'g 141 Pa.Super. 123, 14 A.2d 914 (1940); *Commonwealth v. Richardson*, 229 Pa. 609, 79 A. 222 (1911), aff'g 42 Pa.Super. 337 (1910). It is equally as clear that this element of shared criminal intent must be found to be present to justify a finding that an accused was an accomplice. *Commonwealth v. Lowry*, 374 Pa. 594, 600, 98 A.2d 733, 736 (1953) cert. denied, 347 U.S. 914, 74 S.Ct. 479, 98 L.Ed. 1070 (1954); *Commonwealth v. Thomas*, 357 Pa. 68, 72, 53 A.2d 112, 114 (1947); *Commonwealth v. Doris*, 287 Pa. 547, 135 A. 313 (1926)." *Commonwealth v. Wilson*, 449 Pa. 235, 238, 296 A.2d 719, 721 (1972).

Further, the Commonwealth was not required to establish that appellant was part of a joint effort to cause the death of or inflict serious bodily harm to the victim by direct evidence. This burden may be sustained by means of wholly circumstantial evidence.

*Commonwealth v. Stanley,* 453 Pa. 467, 469, 309 A.2d 408, 410 (1973) ; *Commonwealth v. Amato,* 449 Pa. 592, 594, 297 A.2d 462, 464 (1972); *Commonwealth v. Mc-Fadden,* 448 Pa. 146, 149, 292 A.2d 358, 360 (1972); *Commonwealth v. Chester,* 410 Pa. 45, 50, 188 A.2d 323, 327 (1963).

█ Appellant interprets the evidence as only establishing his presence at the scene and his flight therefrom immediately after the incident. If such were the case, appellant's argument would be more persuasive. Such an assessment of the evidence, however, ignores much of the damaging testimony offered by the Commonwealth. In addition to showing presence and flight, the sequence of events as described by the Commonwealth's evidence was more than sufficient to establish beyond a reasonable doubt, if believed, that appellant was an active partner in the criminal design, if not the actual perpetrator of the deed. He arrived at the bar with Wilcox and waited for him, albeit outside of the premises, during the first encounter. He positioned himself with his two companions across the street from the entrance to the bar for no apparent purpose other than to be able to observe the departure of those in the premises at that time, Ernest and his brother, Ralph. As Ernest approached the group for the purpose of speaking with Wilcox, there was a discussion among them concerning the feasibility of attacking him. They were only deterred from this course of action because of the size of Ernest. The group's unwillingness to accept the role as the aggressor at this point, although it would have been three against one, and the subsequent absence of any hesitancy when Ernest and Ralph left the bar together, strongly suggests that their brief departure in the interim was for the purpose of acquiring the weapon that ultimately was used to cause the death. Under this testimony there appears to be no other explanation for the trio's ominous vigil but to wait for an opportunity to set upon their intended victims. It is equally apparent that each of the men in the

group were full participants in this criminal design. We are convinced that the evidence was sufficient to support a finding of murder of the second degree.

Appellant's second assignment of error is directed at the trial court's allowance of in-court identification testimony. Prior to trial, appellant was successful in suppressing Ernest's identification of him which occurred during a one-to-one out-of-court confrontation arranged by the police. See *Stovall v. Denno,* 388 U.S. 293, 87 S. Ct. 1967, 18 L.Ed.2d 1199 (1967); *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Commonwealth v. Whiting,* 439 Pa. 205, 266 A. 2d 738 (1970). The court rejected appellant's request that the witness be barred from making an in-court identification on the grounds that there was an independent basis and that the identification would not be tainted by the "highly suggestive" show-up.

Since there is no challenge to the trial court's ruling that the show-up was constitutionally impermissible, the sole question for our review is whether there was an independent basis for the in-court identification. *Commonwealth v. Hancock,* 455 Pa. 583, 587, 317 A.2d 588, 590 (1974); *Commonwealth v. Burton,* 452 Pa. 521, 523, 307 A.2d 277, 278 (1973); *Commonwealth v. Pitts,* 450 Pa. 359, 364, 301 A.2d 646, 649 (1973); *Commonwealth v. Spencer,* 442 Pa. 328, 333, 275 A.2d 299, 232 (1971); *Commonwealth v. Williams,* 440 Pa. 400, 404, 270 A.2d 226, 228 (1970); *Commonwealth v. Whiting, supra.* In determining this issue we have frequently relied on the factors the United States Supreme Court articulated in *United States v. Wade, supra.* See e. g., *Commonwealth v. Hancock, supra; Commonwealth v. Spencer, supra.* These are:

" '. . . the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-line up description and the defendant's actual description, any identification prior to lineup of

another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification.' *United States v. Wade,* 388 U.S. 218, 241, 87 S.Ct. 1926, 1940, 18 L.Ed.2d 1149 (1967)."

The Commonwealth does not have to prove an independent basis beyond a reasonable doubt; it need only establish its existence by clear and convincing evidence. *United States v. Wade, supra,* 388 U.S. at 240, 87 S.Ct. 1926, 18 L.Ed.2d 1199; *Commonwealth v. Hancock, supra,* 455 Pa. at 587, 317 A.2d 588. In deciding that Ernest had an independent basis upon which to base his in-court identification, the trial court relied on the following salient facts. First, when Ernest crossed the street to continue his argument with Wilcox he observed appellant with Wilcox and Wingate for three to five minutes under a bright street light from a distance of no more than four feet. Second, when Ernest returned to the bar he could see clearly the three leave the steps and reappear through a full-length glass door which faced directly across the street to the steps where they stood. Third, he made a positive identification of appellant at the preliminary hearing. Fourth, Ernest stated that he was able to recognize appellant from having seen him full face, his side burns and mustache.

Appellant argues that Ernest's impressions during the conversation on the pavement across from the bar should not have been considered for this purpose since these men left and Ernest was only able to determine that the three men who returned were the same men as a result of his observation through the glass door of the bar. It is his position that the question should have been whether Pollard, from a distance of approximately 40 feet, viewing through a glass door under nighttime conditions, could identify appellant as one of the three men involved in the fatal attack. In short, appellant would confine the

determination of an independent basis to the witness' observations after the return of the men to their position across from the bar immediately preceding the shooting.

██ To the contrary, we are of the view that the witness' prior observations were most relevant in considering whether there was an independent basis for the in-court identification testimony. At the suppression hearing, Ernest testified that although the conversation occurred during the early morning hours, there were several nearby street lights and that the area was well illuminated. Ernest testified he could see the face of each man clearly. Ernest was a maximum of four feet from appellant; the discussion lasted from three to five minutes. The witness was able to recall that Wilcox was wearing a dark-colored jacket and a red wool cap, that Wingate was wearing a field jacket and a white wool cap and that appellant wore a leather jacket and a black jeff cap. The precision and detail of this description justifies the conclusion that the witness was capable of determining that the men who returned were the same men he had seen earlier. This is particularly true since his attention had focused upon the trio and their activities. After a review of the totality of the circumstances, we are satisfied the trial court properly found that there was an independent basis for the in-court identification and that the evidence was properly allowed.

Judgment of sentence affirmed.

JONES, C. J., took no part in the consideration or decision of this case.