385 A.2d 1342

**COMMONWEALTH of Pennsylvania**

v.

**Ronald Joseph CONNOLLY (two cases).**

Supreme Court of Pennsylvania.

Argued Nov. 15, 1976.

Decided April 28, 1978.

Randolph W. von Till, Jr., Villanova, for appellant.

Ralph B. D'Iorio, Asst. Dist. Atty., Chief, Appeals Div., for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

NIX, Justice.

As a result of a forcible intrusion into the homes of Mr. and Mrs. Gerald Shoemaker and Mr. and Mrs. Mollo, both residences situated in Delaware County, appellant was subsequently indicted,[1] tried and convicted by a jury for various charges, including murder of the first degree, burglary, robbery, larceny, assault and battery, and conspiracy. After

---

1. The appellant was charged with violations of the pertinent sections of the Act of June 24, 1939, P.L. 872, § 101 et seq.; 18 P.S. 4101 et seq.

disposition of post trial motions a sentence of life imprisonment was imposed under the murder indictment. Following a Post Conviction Hearing, appellant was given the opportunity to file this direct appeal nunc pro tunc.[2]

A capsulized summary of the events which lead to these convictions reveals that during the early morning hours of July 16, 1971, three men purporting to be F.B.I. agents knocked at the door of the Shoemaker residence. As Mr. Shoemaker answered the door, the three men rushed into the house. After some struggle and argument, the three men bound and gagged Mr. and Mrs. Shoemaker and tied them upside down in the cellar over a pipe. The men were in the house for approximately one half hour to forty-five minutes and stole certain property. The three men then went next door to the Mollo residence. Mrs. Mollo came to answer the door, but after turning on a porch light and looking at the men through a window, she became frightened and called for her husband. Mr. Mollo came up from the basement at which time the men broke the front door glass and fired a shot at Mr. Mollo, fatally wounding him. The men then bound the Mollo children, ransacked the house and departed. Appellant was later arrested and identified by Mr. and Mrs. Shoemaker and Mrs. Mollo as the leader of the group that had perpetrated these crimes.[3]

 Photographic identifications were made by the surviving victims which were suppressed by the court "out of an abundance of caution." It is now claimed that the in-court identifications should not have been permitted. A review of the record makes it eminently clear that Mr. and Mrs. Shoemaker and Mrs. Mollo had ample opportunity during the incidents to have made an independent identifica-

2. The Commonwealth agreed that appellant was entitled to a direct appeal although the prescribed period for filing had expired.

3. Although not raised, we have examined the sufficiency of the evidence to support the murder conviction and we are satisfied that it is sufficient. Act of February 15, 1870, P.L. 15, § 2, 19 P.S. § 1187 (1964).

tion. It is well established in this jurisdiction that in determining whether or not testimony of the witness identifying an accused is admissible, the applicable test is whether, granting establishment of the primary illegality, the evidence to which the instant objection is made has been come at by the exploitation of the illegality or instead by means sufficiently distinguishable to be purged of the primary taint. *Commonwealth v. Spencer,* 442 Pa. 328, 275 A.2d 299 (1971). *See also Commonwealth v. Cox,* 466 Pa. 582, 353 A.2d 844 (1976); *Commonwealth v. Hancock,* 455 Pa. 583, 317 A.2d 588 (1974); *Commonwealth v. Burton,* 452 Pa. 521, 307 A.2d 277 (1973); *Commonwealth v. Pitts,* 450 Pa. 359, 301 A.2d 646 (1973); *Commonwealth v. Williams,* 440 Pa. 400, 270 A.2d 226 (1970); *Commonwealth v. Whiting,* 439 Pa. 205, 266 A.2d 738 (1970). Furthermore, the Commonwealth is not required to prove an independent basis beyond a reasonable doubt; but rather it need only establish its existence by clear and convincing evidence. *Commonwealth v. Cox, supra.*

Here, the court suppressed a photographic identification, stating in its opinion that it did so out of an abundance of caution. Accepting the court's finding as to the existence of this primary taint, we agree that the record established a basis for that court's conclusion that these witnesses had sufficient opportunity for observing appellant independent of any suggestive influence that might have occurred as a result of the photographic display. Mrs. Mollo observed appellant first under the porch light through a glass window in the front door when he was only inches away from her. Throughout the ordeal she viewed him in four different rooms. While Mrs. Mollo and appellant were in the kitchen, she spoke to him and asked him to put the gun down. In her son's bedroom, Mrs. Mollo and appellant again spoke to each other. Mrs. Mollo also viewed appellant in the basement. The witness described each of these locations where she was in the immediate presence of the appellant as well lighted.

The testimony of the Shoemakers also indicates a sufficient opportunity to observe appellant. Mr. Shoemaker testified, that he observed the leader by fairly good lighting when appellant was five to six feet within his home for approximately fifteen minutes, and again in the kitchen of his home. Mrs. Shoemaker testified she saw the three men in the living room where the Shoemakers argued with the leader. Additionally, Mrs. Shoemaker testified that she had a discussion with appellant in the bedroom and that she and appellant were both in the kitchen and in the cellar at the same time.

The three witnesses gave detailed descriptions of appellant to the police on the morning of the murder and excepting minor discrepancies, the descriptions fit appellant. We therefore hold that the learned court below did not abuse its discretion in permitting the in-court identifications.

■■ Although appellant has set forth numerous other arguments the only other contention that need be addressed at this juncture is the claim of the ineffectiveness of trial counsel. The other arguments have not been properly preserved for appellate review and would be waived unless it can be established that the failure to pursue and preserve these questions was because of trial counsel's inadequacy. In assessing counsel's stewardship we have stated on numerous occasions that the test to be applied is whether the course of action elected by counsel had some reasonable basis designed to effectuate his client's interests, *Commonwealth v. Hosack,* 459 Pa. 27, 326 A.2d 352 (1974); *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 235 A.2d 349 (1967):

> "We cannot emphasize strongly enough, however, that our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests. The test is *not* whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although

weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decisions had any reasonable basis."

*Commonwealth ex rel Washington v. Maroney, supra,* 127 Pa. at 604–5, 235 A.2d at 352–3. (Emphasis in original) (Footnote omitted).

 In the instant case although some of the claims of ineffective assistance of counsel can be answered based on an independent review of the record, others cannot be determined absent an evidentiary hearing. One such claim involves counsel's failure to call an alibi witness. We could only speculate that perhaps she was unavailable or her testimony might not have been beneficial. It is not our role to speculate in order to determine the reasonableness of the alternative selected particularly where an evidentiary hearing could possibly elicit the reasons for counsel's decisions. For this reason we vacate the judgment of sentence and remand the matter for an evidentiary hearing on the question of trial counsel's ineffectiveness. If the hearing court finds that trial counsel was ineffective, a new trial should be awarded. If the court finds that trial counsel was not ineffective, the judgment of sentence is to be reinstated.

JONES, former C. J., did not participate in the decision of this case.

MANDERINO, J., filed a dissenting opinion.

MANDERINO, Justice, dissenting.

I dissent. In this case, in-court identifications were made by witnesses who had made pre-trial photographic identifications of appellant. These pre-trial identifications were suppressed by the trial court because they were secured under highly suggestive circumstances. Such photographic identification procedures created a substantial risk of misidentification. *See Foster v. California,* 394 U.S. 440, 89

S.Ct. 1127, 22 L.Ed.2d 402 (1969); *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1972). The in-court identifications should not have been permitted unless it was first shown that the proposed in-court identifications were reliable.

An in-court identification is a one-on-one confrontation between a witness and the accused under highly suggestive circumstances. As stated in *Commonwealth v. Fowler,* 466 Pa. 198, 203–04, 352 A.2d 17, 19–20 (1976):

> "Trial testimony identifying one as the person observed at the time of a crime is a one-on-one confrontation involving circumstances even more suggestive than those present at pretrial one-on-one confrontations. During the trial, the identifying witness knows that the defendant present in the courtroom has been accused, arrested, and is being tried for the crime. Prior to trial, such circumstances may not yet have occurred or may not yet be known to the witness. *Thus, the testimony of a witness who will point an accusing finger at the defendant during the trial, should be prohibited unless the prosecution establishes by clear and convincing evidence at a suppression hearing that the witness's proposed trial identification will be reliably based on the witness's observation at the time of the crime,* and that the identification was not induced by events occurring between the witness's observations at the time of the crime and the witness's in-court identification." (Emphasis added.)

Because of the highly suggestive nature of in-court identifications, an "independent basis" for the witness identification must be established prior to trial or outside the hearing of the fact-finder in order to assure that the in-court identification is reliable. Evidence that the witness was able to pick out the accused in a fairly conducted pre-trial "line-up procedure provides some assurance that the in-court identification is reliable. Without such evidence, the in-court identifications which are highly suggestive cannot be effectively tested.