394 A.2d 586

**COMMONWEALTH of Pennsylvania**

v.

**Martin DIGGS, Appellant.**

Superior Court of Pennsylvania.

Submitted June 12, 1978.

Decided Nov. 22, 1978.

John W. Packel, Assistant Public Defender, and Benjamin Lerner, Defender, Leonard Sosnov, Assistant Defender, Philadelphia, for appellant.

Robert B. Lawler, Assistant District Attorney, and Edward G. Rendell, District Attorney, Philadelphia, for Commonwealth, appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

HESTER, Judge:

On May 14, 1976, appellant, Martin Diggs, was convicted by a jury of burglary and six counts of aggravated robbery. Post-trial motions were argued and denied and sentence imposed. On this direct appeal, appellant raises several assignments of error in rulings of the trial court. Because we find his contentions without merit we will affirm.

Testimony at the suppression hearing and at trial revealed the following scenario. On April 5, 1973 at 7:40 A.M., appellant walked into the Baldwin Dairies, at Foulkrod and Duffield Streets in Philadelphia, requesting employment. An employee, Arthur Rawes, replied there were no positions open at that time, and appellant left the premises, passing by one Atwood Purcell who observed the foregoing events. Five or ten minutes later, three armed men entered the dairy and ordered all inside to lie on the floor. Present were Rawes, Purcell, Greenard Stanley, and members of the Baldwin family, George, John, and Wayne. John was ordered to open the safe while Wayne was told to find the key to the men's room. After taking money from the safe and from several of the individual victims, the robbers forced all present into the men's room. The door was shut and the robbers fled. Minutes later, the victims cautiously exited the men's room, whereupon George Baldwin called the police.

Detective Daniel Brooker of the Philadelphia Police Dept. was among those responding to the call and, upon arriving, wrote down descriptions of all perpetrators. Later that day, the victims were shown photographs by Brooker, and Rawes picked the photo of one James Price as being one of the robbers. Appellant's photo was not included in this array.

Appellant was arrested on April 12, 1973 on suspicion of the robbery and was interviewed by Brooker at the Northeast Police Division. As appellant had a prior arrest record, Brooker ordered a photo of him from the crime lab to be shown to the victims. That photo, however, was delayed in arriving from the crime lab, and so Brooker himself photographed appellant and used that picture for future arrays. On April 13 and 14, George Baldwin and Atwood Purcell, respectively, picked appellant's photo out of an array shown them by Brooker. Baldwin and Purcell also identified appellant at the Preliminary Hearing and at trial. None of the other victims could identify appellant.

■ Appellant's first contention is that the identification testimony should have been suppressed.[1] Both in proceedings below and in this Court, the Commonwealth has conceded that appellant's arrest was not supported by probable cause. (N.T. 103, Appellee brief at p. 7). But the Commonwealth has consistently argued that the identifications were not tainted by this initial illegality because they had a basis independent of the improper arrest. In determining what consequences flow from initial illegalities, we must always return to the guiding principles of *Wong Sun v. U. S.,* 371 U.S. 471, 487–8, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963):

> "We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " (Citations omitted.)

The Commonwealth need not prove an independent basis beyond a reasonable doubt. Rather, it need only establish its existence by clear and convincing evidence. *Commonwealth v. Connolly,* 478 Pa. 117, 385 A.2d 1342 (1978); *Commonwealth v. Cox,* 466 Pa. 582, 353 A.2d 844 (1976).

■ In the realm of identifications preceded by an illegal arrest, our courts have held that taint may be purged so long as the witnesses can be found to have had sufficient opportunity for observing the individual during the crime or beforehand. The rationale for such a rule was well stated in *Commonwealth v. Garvin,* 448 Pa. 258, 293 A.2d 33 (1972): "We cannot assume that but for the illegal arrest the appellant would have remained at large indefinitely . . No law abiding society could tolerate a presumption that but for the illegal arrest the suspect would never have been

1. The photo identifications of appellant were never introduced at trial. The only identifications used were those at the Preliminary Hearing and at the trial itself.

required to face his accusors." *id.* at 266, 264, 293 A.2d at 37, 38. We recently applied these principles in *Commonwealth v. Ryan*, 253 Pa.Super. 92, 384 A.2d 1243 (1978) where we held, as did the *Garvin* court, that an illegal arrest would not taint all subsequent identifications if it is shown that the witnesses had ample opportunity to observe the perpetrators and "(t)he only effect of the arrest . . . [is] to hasten the inevitable confrontation between appellant and his victims, not to influence its outcome," *Ryan* at 1247.[2]

Instantly, victim Atwood Purcell had two opportunities to observe appellant on the day of the robbery. The first occurred when appellant asked for employment and was three feet from Purcell with excellent lighting conditions (N.T. 40). The second occurred just minutes later during the robbery itself when appellant walked directly to Purcell and pointed a gun. Purcell testified: "I recognized him from seeing him just a few minutes before when he came for a job." (N.T. 326). Similarly, victim George Baldwin, the only other witness who could identify appellant, was confronted at arm's length for ten to twenty seconds by appellant pointing a firearm. Nothing was covering appellant's face and there were no obstructions between Baldwin and appellant. (N.T. 281). Compare, *Commonwealth v. Taylor*, 472 Pa. 1, 370 A.2d 1197 (1977) (witness' view of robber obstructed by "mirror-type" sunglasses and a hat). Moreover, Baldwin had been shown "hundreds" of photographs before he was shown any array which includ-

2. The facts in the instant case also serve to answer the objections of Judge Hoffman's very cogent dissent in *Ryan*. Judge Hoffman argued that the *Garvin* Line of cases requires the Commonwealth to show a source of information independent of the illegal arrest that could have led to the legal arrest of the defendant. In other words, the rule of "hastened confrontation" should be premised on the factual, rather than the presumed, inevitability of defendant's arrest. Instantly, the photo used to identify appellant before trial was taken of him after his illegal arrest. But the record shows appellant's photos from prior arrests were on their way into Det. Brooker's hands when appellant was arrested. The photos finally arrived a day or two after the victims had already identified appellant (N.T. 38), and would have been shown to the victims at that time. Hence, appellant's arrest would have been delayed only a few days.

ed appellant's picture. (N.T. 24). Baldwin's immediate choice at that time of appellant's photo persuades us that his view of the robber was sufficient to be purged of the illegal arrest.[3]

The Commonwealth has also abandoned any attempt to justify the uncounseled photo array used to identify appellant before trial.[4] We need not reconsider the question of when an accused is entitled to counsel at a photographic identification,[5] because, even assuming appellant was denied a right to counsel, we are satisfied, for the reasons stated above, that the in-court identifications of appellant had bases independent of taint flowing from any prior illegali-

---

**3.** Another reason for not always excluding an identification following an illegal arrest lies in the purpose and scope of the exclusionary rule itself. See *Garvin,* supra. Evidence obtained in violation of the Fourth Amendment is forbidden at trial, not because it is untrustworthy or nonprobative, but to deter law enforcement officials from transgressing an important constitutional safeguard. *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Where the connection between the illegal arrest (or search) and the questioned evidence attenuates, however, the deterrent effect of further extension of the Fourth Amendment exclusionary rule becomes, at best, speculative and uncertain. *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). At work, of course, is a balancing process, weighing the substantial societal costs of applying the exclusionary rule against commanding respect for the sanctity of a man's home and privacies of his life. As the *Garvin* court noted, when the link between an identification and illegal arrest becomes dissipated, the values to a rational system of criminal justice must persist. *Stone v. Powell,* supra.

**4.** From the record, it appears appellant called his lawyer from the police station approximately one hour before the victims were shown appellant's photo. The substance of the telephone conversation is not of record.

**5.** The holding of *Commonwealth v. Whiting,* 439 Pa. 205, 266 A.2d 738 (1970), requiring counsel at post-arrest photo displays, was undercut considerably in *U. S. v. Ash,* 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973) holding the Federal Constitution does not grant the right to counsel at such arrays. The continued validity of *Whiting,* then, is called into question. See *Commonwealth v. Claitt,* 454 Pa. 313, 311 A.2d 922 (1973). (*Whiting* "can no longer be considered an accurate statement of federal constitutional law." Pomeroy, J., concurring). See also *Commonwealth v. Scott,* 469 Pa. 258, n. 9, 365 A.2d 140 n. 9 (1976). See also *Commonwealth v. Jackson,* 227 Pa.Super. 1, 323 A.2d 799 (1974).

ties. *Commonwealth v. Connolly*, 478 Pa. 117, 385 A.2d 1342 (1978). In addition, the court below reviewed the array and procedure used to identify appellant and was satisfied there was no unnecessary suggestiveness such as to lead to a mistaken identification. (N.T. 102, 104–5). *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). *Commonwealth v. Hall*, 456 Pa. 243, 317 A.2d 891 (1974). We affirm those findings. Moreover, there was no discrepancy between the pre-lineup description and appellant's actual description; nor did either of the two witnesses at any time make a mistaken identification or fail to identify appellant at any confrontation. See *U. S. v. Wade*, 388 U.S. 218, 241, 87 S.Ct. 1926, 1940, 18 L.Ed.2d 1149 (1967); *Commonwealth v. Scott*, 469 Pa. 258, 365 A.2d 140, (1976).[6]

Appellant also contends the Commonwealth improperly linked him, through a past acquaintanceship, to a man identified as one of the robbers. The salient facts are these: witnesses who could not identify appellant at trial did successfully identify, through photos at trial, one James "Bubbles" Price as being one of the robbers.[7] Two police officers then testified, over objection, that they knew both appellant and James Price and had seen them in one another's company "many times" in the past. It is well settled that proof of facts showing the commission of the crime by someone else is admissible. *Commonwealth v. Boyle*, 470 Pa. 343, 368 A.2d 661 (1977). Moreover, our Supreme Court has approved McCormick's formulation for determining relevance: " '(D)oes the evidence offered render the desired inference more probable than it would be without the evi-

6. We decline to accept appellant's invitation to rule on whether the exclusionary rule should operate on the defendant's person when police illegalities are "flagrant". Appellant's brief at 19–20. Whatever the merits of such a contention, the record here would not allow us to conclude police action was "flagrant". See *Commonwealth v. Krall*, 452 Pa. 215 n. 4, 304 A.2d 488 n. 4 (1973). Compare *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975): "[I]llegal arrest or detention does not void a subsequent conviction." id. at 119, 95 S.Ct. at 865.

7. Price died before he could be brought to trial for these crimes. See *Commonwealth v. Moody*, 476 Pa. 223, 382 A.2d 442, 451 (1977).

dence? . . . Relevant evidence, then, is evidence that in some degree advances the inquiry, and thus has probative value, and is prima facie admissible' McCormick, Evidence, §§ 185 at 437–8 (2nd ed., 1972)." *Commonwealth v. Story,* 476 Pa. 391, 383 A.2d 155, 158 (1978); *Commonwealth v. Walzack,* 468 Pa. 210, 360 A.2d 914 (1976). Here, we cannot say the introduction of appellant's acquaintanceship with Price had "no rational probative value", *Story,* supra, 476 Pa. at 399, 383 A.2d at 159, and the jury could properly consider the weight to be accorded the evidence as well as the credibility of Commonwealth witnesses. *Commonwealth v. Davis,* 466 Pa. 102, 351 A.2d 642 (1976); *Commonwealth v. Eckert,* 244 Pa.Super. 424, 368 A.2d 794 (1976).

Appellant's remaining contention, that he was denied his right to a speedy trial under Pa.Rules of Crim.P. 1100, was not raised in written post-trial motions, and is therefore waived. *Commonwealth v. Blair,* 460 Pa. 31, 331 A.2d 213 (1975).

Judgments of Sentence Affirmed.

JACOBS, President Judge, concurs in the result.

SPAETH, J., files a concurring and dissenting opinion.

HOFFMAN, J., did not participate in the consideration or decision of this case.

SPAETH, Judge, concurring and dissenting:

I wish to note my adherence to what I believe is the correct interpretation of *Garvin,* as was demonstrated by Judge HOFFMAN (albeit in dissent) in *Ryan* : That the question that must be asked is whether the police would have reached appellant by independent means. Here, the police suspected appellant and could have shown his file photograph to the victims without having arrested him at all. Thus the police in fact would have eventually apprehended the defendant through the use of independent means.

Furthermore, I should award a new trial because the testimony by the two police officers, that they knew both appellant and Price and had seen them in one another's company "many times," should not have been admitted. The majority's citation of McCormick does not go far enough. As McCormick says, in the section cited by the majority:

But relevance is not always enough. There may remain the question, is its value worth what it costs? There are several counterbalancing factors which may move the court to exclude relevant evidence if they outweigh its probative value. In order of their importance, they are these. First, the danger that the facts offered may unduly arouse the jury's emotions of prejudice, hostility or sympathy . . . .

McCormick at 438–39 (footnotes omitted).

Here, Price had been identified as one of the robbers, by witnesses who could not identify appellant. The police officers' testimony regarding appellant's association with Price encountered the very danger McCormick cites: Whatever relevance it had was outweighed by its tendency to show not guilt, but guilt by association.

The judgment of sentence should be reversed and the case remanded for new trial.