402 A.2d 519

**COMMONWEALTH of Pennsylvania**

v.

**Francisco OLIVENCIA, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 31, 1977.

Decided April 20, 1979.

440

442

Joseph J. Frieri, Philadelphia, for appellant.

Eric B. Henson, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

Following a jury trial commenced on August 25, 1976, appellant was convicted of two counts of robbery,[2] one count of aggravated assault,[3] and one count of kidnapping.[4] Motions for a new trial and in arrest of judgment were denied, and appellant was sentenced to a term of imprisonment of from ten to twenty years on each of the robbery charges, sentences to run concurrently, from five to ten years on the aggravated assault charge, sentence to run concurrently, and from ten to twenty years on the kidnapping charge, sentence to run concurrently with the robbery sentences.

This appeal was originally submitted to us on briefs on January 10, 1978, but we were forced to remand on December 29, 1978, 263 Pa.Super. 624, 400 A.2d 641, for completion of the record. The complete record was certified to us on

2. 18 Pa.C.S. § 3701.

3. 18 Pa.C.S. § 2702.

4. 18 Pa.C.S. § 2901.

January 17, 1979. We may now consider the questions herein presented.

On appeal, appellant claims that he was deprived of his rights to due process and to effective assistance of counsel because his trial counsel failed to: interview an alibi witness; argue post-trial motions; raise prosecutorial misconduct at post-trial motions; have the assistant district attorney's summation to the jury stenographically recorded; and move for separate trials for the offenses which involved a police officer, Raymond Schultz. Appellant also contends that the in-court identification of him made by Jose Serrano was tainted by a suggestive pre-trial confrontation and was therefore, inadmissible. Appellant's final contention is that he was deprived of his right to counsel when the trial court refused to replace trial counsel with another attorney. Finding no merit to any of these contentions, we affirm the judgment of sentence of the court below.

The facts pertinent to our consideration of the instant appeal are as follows. On December 25, 1975, while on duty, Officer Raymond Schultz responded to a call he received at 5:40 a. m., reporting a robbery at a gas station in Philadelphia. When he arrived at the scene of the robbery, Officer Schultz was informed by Jose Serrano, who worked as an attendant at the gas station, that the suspect was a Puerto Rican male wearing a red and white sweater, and that following the robbery, the miscreant had run in a northerly direction on Marshall Street. Officer Schultz then proceeded to cruise the area in his police patrol car. A few blocks from the gas station, he encountered appellant, a Puerto Rican male, who was wearing jeans and a brown, black, and white plaid jacket. Officer Schultz intended to ask appellant if he had seen anyone matching the description, but appellant pulled out a gun, pointed it at Officer Schultz's face, and ordered him out of his car. Appellant took Officer Schultz's weapon, then ordered him back into the car and had him drive appellant to a location several blocks away. Appellant disembarked there and walked up the street. Officer Schultz followed, but was not readily able to locate

appellant. Officer Schultz called for backup help, then continued his search. One of the other officers summoned, John Yeager, followed footprints he spotted in the freshly-fallen snow. The prints led him to an apartment. He knocked on the door and was greeted by a white male and a white female. The female, Cecilia Valesquez, invited Officer Yeager in, and while inside the apartment, he noticed a plaid jacket. A search of the premises was conducted, and appellant was discovered locked inside a closet.

Jose Serrano, who identified appellant and testified against him at trial, first identified him in an out-of-court one-to-one confrontation at the preliminary hearing. Besides his encounter with appellant on the night of the offense, Mr. Serrano testified that he knew appellant from the neighborhood, but not by name. Appellant moved to suppress this identification, but his motion was denied by the court below. At trial, and in post-trial motions, appellant continued to take issue with the "suggestiveness" of the pre-trial identification. Appellant contends that Jose Serrano's in-court identification of appellant was tainted by the "suggestive" pre-trial confrontation, and therefore, should have been ruled inadmissible.

Without deciding whether the preliminary hearing was unduly suggestive, we hold that there was sufficient evidence on the record to justify the finding of the lower court that the in-court identification arose from a source independent of the confrontation at the preliminary hearing. Given a suggestive out-of-court confrontation, an in-court identification is admissible if, considering the "totality of the circumstances," *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), the subsequent in-court identification arose from an origin "sufficiently distinguishable" from the illegal encounter as "to be purged of the primary taint." *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963); *see Commonwealth v. Connolly*, 478 Pa. 117, 385 A.2d 1342 (1978); *Commonwealth v. Taylor*, 472 Pa. 1, 370 A.2d 1197 (1977); *Commonwealth v. Fowler*, 466 Pa. 198, 352 A.2d 17 (1976); *Commonwealth v. Diggs*, 260 Pa.Super. 349, 394 A.2d 586 (1978).

■ To determine the existence of this independent basis, the time honored criteria promulgated by our supreme court are:

" 'the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation and the length of time between the crime and the confrontation.' " *Commonwealth v. Fowler, supra,* 466 Pa. at 206, 352 A.2d at 21, *quoting Neil v. Biggers,* 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

Of these factors, the opportunity of the witness to observe the defendant at the time of the incident is considered the most important. *Commonwealth v. Brown,* 462 Pa. 578, 342 A.2d 84 (1975); *Commonwealth v. Wilson,* 450 Pa. 296, 301 A.2d 823 (1973); *see Commonwealth v. Diggs, supra.*

In the instant case, Jose Serrano testified that he recognized appellant (although he did not know his name) by seeing him in the neighborhood prior to the morning of the robbery. On the night of the robbery, appellant approached Mr. Serrano and asked him how he was doing and whether he had any drinking water available. Mr. Serrano directed appellant to the water fountain inside the office. While Mr. Serrano was preparing a receipt in the office, appellant came from behind him, put a gun in his side, and told him "give me the money or I shoot." (N.T. 5.8). Appellant took the money and then shot Mr. Serrano. Mr. Serrano testified that the whole incident transpired over a span of fifteen minutes. In addition, Mr. Serrano, in court, identified appellant's jacket as the same "sweater" appellant had worn during the robbery. The first time Mr. Serrano encountered appellant after the robbery was at appellant's preliminary hearing. He identified appellant at that time as the man who robbed him, and he subsequently identified appellant again at trial. At no time was Mr. Serrano shown photographs of appellant.

■ In reviewing the above summary, we find ample evidence in the record at both the preliminary hearing and

the suppression hearing to support a finding of independent origin. Mr. Serrano recognized appellant from seeing him in the neighborhood. He saw and conversed with appellant prior to and during the robbery, and the entire incident took place over a span of fifteen minutes. Taken as a whole, such factors more than adequately purge any taint that may have been incurred as a result of the one-to-one confrontation at the preliminary hearing. Since an independent basis existed, the testimony was properly admitted.

Appellant also contends that he was deprived of his right to counsel when the court refused to replace trial counsel as requested by appellant. Appellant claims such a replacement should have been made because the attorney-client relationship deteriorated due to counsel's advising appellant to plead guilty, and because both appellant and counsel joined in the motion for replacement. It is well established that an indigent is entitled to free counsel, but not entitled to free counsel of his choice, *see Commonwealth v. Johnson*, 428 Pa. 210, 236 A.2d 805 (1968), and although the right to counsel is absolute, there is no absolute right to a particular counsel. *See United States ex rel. Carey v. Rundle*, 409 F.2d 1210 (3d Cir. 1969), *cert. denied* 397 U.S. 946, 90 S.Ct. 964, 25 L.Ed.2d 127 (1970). Upon appellate review, we are mindful that the decision whether a petition for change of court-appointed counsel should be granted is within the sound discretion of the trial court, *Commonwealth v. Segers*, 460 Pa. 149, 331 A.2d 462 (1975), and as such, should not be overturned unless we find an abuse of that discretion. Under the circumstances of the instant appeal, we find no abuse of discretion by the court below in denying appellant's request for replacement of counsel. We are not here presented with a situation similar to that of *Commonwealth v. Tyler*, 468 Pa. 193, 360 A.2d 617 (1976), wherein there were on-going irreconcilable differences between the accused and his counsel. In the instant appeal, the impasse reached by appellant and his counsel concerned the decision whether appellant should plead guilty. Once this plea was rejected by the court below, the source of

dissension was eliminated from the attorney-client relationship. This being the case, we cannot find an abuse of the lower court's discretion in refusing to grant the request for replacement.

Appellant raises several bases upon which he contends trial counsel was ineffective. We find no merit to any of these contentions, but wish to address several of them. Appellant contends his trial counsel was ineffective for failing to interview or call as an alibi witness the boyfriend of Cecilia Valesquez, who was present in Cecilia's apartment the morning of the robbery. Appellant contends that this witness' testimony "could have been critical in establishing the time when the appellant entered the Valesquez house on December 25, 1975." (Appellant's brief at 9). At trial, however, a stipulation concerning what the hospitalized Cecilia Valesquez would have testified to, was read to the jury. The stipulation, in pertinent part, stated:

"But, she didn't know exactly when, but about 4:30 in the morning, the defendant entered the home.

At that time, the defendant was acting crazy. The defendant went upstairs and was making noises and her mother said that he had to leave. She came downstairs and locket [sic] him in the closet and she told her mother that the defendant had left.

The police came to the door approximately one half hour after the defendant had been there." (N.T. 5.101–5.102).

The standard of review for questions of ineffectiveness of counsel is that which was elucidated by our supreme court in the case of *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 604–5, 235 A.2d 349, 352–53 (1967),

"We cannot emphasize strongly enough, however, that our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had some *reasonable basis* designed to effectuate his client's interests. The test is *not* whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the

balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decisions had any reasonable basis."

 Failure to call an alibi witness is not per se ineffective assistance of counsel. *Commonwealth v. Owens,* 454 Pa. 268, 312 A.2d 378 (1973). Ineffectiveness will not be found where there is a reasonable basis for counsel's decision based on a matter of trial strategy. *Commonwealth v. Dancer,* 460 Pa. 95, 331 A.2d 435 (1975). In the instant appeal, the stipulation read to the jury indicated that Cecilia Valesquez would have testified that appellant was locked in a closet in her apartment for over an hour before the offenses in question occurred. Obviously, the jury chose not to believe Ms. Valesquez' rendition of the sequence of events occurring on December 25, 1975. Appellant, at least by implication, contends that by presenting the testimony of another occupant of that apartment, the exact time when appellant entered the apartment would have been more firmly established. We disagree. The evidence Cecilia's boyfriend could have presented would have merely been cumulative. It is certainly possible that "[h]ere, given the weakness of the alibi, trial counsel could have reasonably believed it would not have aided the defense." *Commonwealth v. Owens, supra,* 454 Pa. at 274, 312 A.2d at 382, *quoting Commonwealth v. Karchella,* 449 Pa. 270, 273–74, 296 A.2d 732, 733 (1972). In the case of *Commonwealth v. Harper,* 233 Pa.Super. 294, 300, 334 A.2d 761, 763 (1975), this court stated:

"Appellant also asserts that he received ineffective assistance because counsel failed to investigate possible witnesses, namely, the other occupants of the apartment who were present when the search was executed. The record, however, is devoid of any indication that the testimony of the other occupants would have been beneficial to the defense. Without some positive indication or demonstration that their testimony would be helpful to the defense, we cannot equate the failure to call the other occupants as witnesses with a conclusion of ineffective assistance of counsel (citation omitted)."

In this light, we hold that counsel's failure to interview an additional alibi witness did not constitute ineffectiveness.

Appellant contends that counsel was also ineffective for his failure to raise the issue of prosecutorial misconduct in his post-trial motions. The manifestation of "misconduct" which appellant alludes to occurred during the prosecution's summation to the jury. During that summation, the assistant district attorney used the term "uncontradicted evidence" (N.T. 6.6 November 20, 1976), and expressed his opinion that he "had no qualms that putting a gun to Officer Schultz's body was an aggravated assault." (N.T. 6.11 November 20, 1976). After the prosecution concluded its summation, trial counsel objected to the two comments in issue, and these objections were overruled. Counsel did not raise the issue of prosecutorial misconduct in post-trial motions.

In reviewing this claim of ineffectiveness for failure to press this objection at post-trial motions, "a finding of ineffectiveness could never be made unless we concluded that the alternatives not chosen offered a potential for success substantially greater than the tactics actually utilized." *Commonwealth ex rel. Washington v. Maroney, supra*, 427 Pa. at 605 n. 8, 235 A.2d at 353 n. 8. While we do not necessarily condone the language used by the prosecution in the instant appeal, we find that it does not rise to the level of "prosecutorial misconduct," and accordingly, we do not find that any prejudice resulted to appellant. For this reason, it is clear that if counsel had pressed this objection on appeal, it would not have justified the award of a new trial. Thus, counsel cannot be found to be ineffective for failing to preserve an objection which had no probability of success. *Commonwealth v. Sullivan*, 472 Pa. 129, 371 A.2d 468 (1977); *Commonwealth v. Rice*, 456 Pa. 90, 318 A.2d 705 (1974).

The American Bar Association Standards Relating to the Prosecution Function and the Defense Function § 5.8 (approved Draft 1971) provides:

"Argument to the jury.

(a) The prosecutor may argue all reasonable inferences from evidence in the record. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.

(b) It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of defendant . . . ."

Our supreme court has held that:

". . . [w]here the language of the district attorney is intemperate, uncalled for and improper, a new trial is not necessarily required. The language must be such that its 'unavoidable effect would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant, so that they could not weigh evidence and render a true verdict. The effect of such remarks depends upon the atmosphere of the trial, and the proper action to be taken is within the discretion of the trial court. [citations omitted]." *Commonwealth v. Jarvis*, 482 Pa. 598, 605–606, 394 A.2d 483, 487 (1978), *quoting Commonwealth v. Stoltzfus*, 462 Pa. 43, 61, 337 A.2d 873, 882 (1975).

As applied to the instant case, we hold that the prosecutor's use of the term "uncontradicted evidence" and his statement that he "had no qualms that putting a gun to Officer Schultz's body was aggravated assault" did not have the unavoidable effect of prejudicing the jury or forming in their minds a fixed bias and hostility toward appellant such that they could not weigh evidence and render a true verdict. The assistant district attorney did not give his opinion whether defendant was guilty, nor did he comment as to appellant's trial tactics. The remarks in issue are not of the type traditionally condemned as blatantly appealing to the prejudice, bias, and passions of the jury. *See Commonwealth v. Evans*, 479 Pa. 100, 387 A.2d 854 (1978); *Commonwealth v. Mayberry*, 479 Pa. 23, 387 A.2d 815 (1978). Accordingly, we hold that the assistant district attorney did not engage in prosecutorial misconduct and that appellant's

trial counsel was not ineffective for declining to preserve an objection which had no probability of success.

 Another ground upon which appellant claims that trial counsel was ineffective is that he failed to have the assistant district attorney's summation to the jury stenographically recorded.[5] We find no merit to this contention.

 Stenographic recordation of the prosecution's summation is not a requisite of due process as long as an equivalent picture of what transpired below is apparent. See Commonwealth v. Silvis, 445 Pa. 235, 284 A.2d 740 (1971). In the instant appeal, counsel for appellant objected to those portions of the prosecution's summation which were allegedly prejudicial, and those portions were made part of the trial transcript. (N.T. 6.5–6.11). Having been properly preserved on the record for appellate review, we fail to see how counsel was ineffective for not formally requesting the court to record stenographically the prosecution's summation to the jury.

Finding no merit to any of appellant's contentions, we affirm the judgment of the court below.

SPAETH, J., files a dissenting statement.

JACOBS, and WATKINS, former President Judges, and HOFFMAN, J., did not participate in the consideration or decision of this case.

SPAETH, Judge, dissenting:

The stipulation of Cecilia's testimony contained only an approximation of both the time when appellant entered her

---

5. Appellant also contends counsel was ineffective for failing to argue post-trial motions. This contention is meritless. Post-trial motions were presented to the court below and preserved for appellate review. Indeed, the motion to suppress evidence and the motion to suppress Jose Serrano's identification of appellant were already argued in front of the lower court judge, the Honorable Albert F. Sabo, Jr., during the pretrial suppression hearing. It is doubtful that post-trial oral argument would have substantially enhanced appellant's probability of success. We, therefore, do not find that counsel's failure to argue post-trial motions constituted ineffective assistance of counsel.

house and the time between appellant's entry and the arrival of the police officer. Because it consisted merely of approximations it could be viewed by the jury as not inconsistent with the Commonwealth's case, and if inconsistent, very weak. Such a view of the stipulation was especially likely given the fact that Cecilia was not herself a witness. It was therefore essential that counsel interview the boyfriend and learn whether his version of the incident and the times involved was both more helpful and more definite than Cecilia's. I cannot say that the boyfriend should have been *called*, for I do not know what he would have said. I believe, however, that counsel was ineffective for not *asking* him what he would have said. *See Commonwealth v. Jones*, 263 Pa.Super. 149, 397 A.2d 790 (1978) (SPAETH, J., dissenting).