**COMMONWEALTH of Pennsylvania, Appellee**

v.

**KORATICH'S GOLDEN RAIL, INC., Appellant.**

Superior Court of Pennsylvania.

Argued April 30, 2008.

Filed May 28, 2008.

Noah M. Geary, Washington, for appellant.

Marjorie J. Fox, Asst. Dist. Atty., for Com., appellee.

BEFORE: ORIE MELVIN, BENDER and ALLEN, JJ.

OPINION BY ALLEN, J.:

¶1 Koratich's Golden Rail, Inc. ("the Golden Rail" or "Appellant") is a corporate liquor licensee which appeals from the judgment of sentence entered following a conviction by a jury of furnishing liquor or malt brewed beverage to a minor under 21 years of age.

¶2 The Liquor Code at 47 P.S. § 4-493(1) provides:

It shall be unlawful ... for any licensee or the board, or any employe, servant or agent of such licensee or of the board, or any other person, to sell, furnish or give any liquor or malt or brewed beverages, or to permit any liquor or malt or brewed beverages to be sold, furnished or given, to any person visibly intoxicated, or to any minor: Provided further, That notwithstanding any other provision of law, no cause of action will exist against a licensee or the board or any employe, servant or agent of such licensee or the board for selling, furnishing or giving any liquor or malt or brewed beverages or permitting any liquor or malt or brewed beverages to be sold, furnished or given to any insane person, any habitual drunkard or person of known intemperate habits unless the person sold, furnished or given alcohol is visibly intoxicated or is a minor.

Appellant raises the following question:

In light of the fact that (1) no trial witness testified that any employee of the Golden Rail served the minor in question alcohol on the night in question, and (2) no trial exhibit establishes this either, is there insufficient evidence of record to sustain the conviction against the Golden Rail for violating 47-4-493(1)?

Brief for Appellant at 3.

*Factual Background*

¶3 On November 18, 2004, at approximately 2:00 a.m., James "Jake" Superack, age 18, was driving a vehicle in which Chad Seybold, age 21, was a passenger. The vehicle was traveling approximately ninety miles per hour in a 40 m.p.h. zone when it crashed into a tree, resulting in the deaths of Mr. Superack and Mr. Seybold.

¶4 Paramedic Michael Fletcher testified that there was an odor of alcohol at the scene of the accident, which was a five minute drive and 1.64 miles from the Golden Rail.

¶5 Gretchen Georgi testified to being 17 years old on November 17, 2004 and using someone else's identification to enter and drink alcohol at the Golden Rail. Ms. Georgi said she had been to the Golden Rail "a handful, a good bit of times." N.T., 1/22-24/07, at 129-130. Ms. Georgi said she saw James Superack and Chad Seybold "later in the evening" and that they both appeared to be intoxicated. *Id.* Ms. Georgi observed both young men holding beer, although she did not see who gave it to them. She noted that Mr. Superack and Mr. Seybold stayed at the Golden Rail until it closed.

¶6 Jessica Blair testified to being 20 years old around midnight on November 17, 2004 when she went to the Golden Rail to pick up her boyfriend. Ms. Blair had been to the Golden Rail on previous occasions and had used fake identification to gain entry. On November 18, 2004, Ms. Blair saw Mr. Superack and Mr. Seybold at the Golden Rail, but did not see them "with a drink." N.T., 1/22-24/07, at 136.

¶7 Joshua Humble testified to being 21 years old on November 17, 2004 and arriving at the Golden Rail between 9:00 and 10:00 p.m. He stated that he had been to the Golden Rail to drink alcohol several

times before turning 21 and that he was admitted to the bar without identification because he "knew people." N.T., 1/22–24/07, at 157–158. Mr. Humble saw Mr. Superack and Mr. Seybold at the Golden Rail on the night of the accident but did not see them drink.

¶ 8 Emily Beabout testified to being 21 years old on November 17, 2004 when she arrived at the Golden Rail at approximately 10:30 p.m. Ms. Beabout began frequenting the Golden Rail when she was 19 years old and used fake identification to get in. On the night of the accident, Ms. Beabout saw Jake Superack drinking beer "up by the bar", although she did know where he got the beer. N.T., 1/22–24/07, at 164. Mr. Superack was still at the Golden Rail and appeared drunk when Ms. Beabout left at approximately 1:00 a.m.

¶ 9 John Fahey testified to being 20 years old on the evening of November 17, 2004 when he got into the Golden Rail using fake identification. When he left the bar between 1:00 and 2:00 a.m. he saw Mr. Superack vomiting in the parking lot.

¶ 10 Christopher Bland testified to being 20 years old on the evening of November 17, 2004 when he went to the Golden Rail and saw Mr. Superack drinking beer. Mr. Bland had seen Mr. Superack earlier when Mr. Superack first arrived at the Golden Rail; at that time he was not holding a can of beer.

¶ 11 Daniel King testified to being 21 years old on November 17, 2004 when he arrived at the Golden Rail between 9:30 and 10:00 p.m. Mr. King first saw Mr. Superack "sitting or standing right next to" the bar. N.T., 1/22–24/04, at 190. Mr. King was "pretty sure" Mr. Superack had a beer in his hand and noted that he was drinking beer "throughout the night." Id. In addition, he was "pretty much positive" that Mr. Superack bought the beer at the Golden Rail. Id. Mr. King noted that he had not had any difficulty getting into the Golden Rail and getting served when he was underage.

¶ 12 Jennie Blasioli testified to being 21 years old on the evening of November 17, 2004 when she went to the Golden Rail. Ms. Blasioli witnessed Mr. Superack "take a shot" of liquor by the bar. N.T., 1/22–24/07, at 208. Ms. Blasioli began going to the Golden Rail when she was 18, and noted that with fake identification, "it wasn't difficult to get in." Id. at 209. Ms. Blasioli had also worked as a bartender at the Golden Rail and recalled meetings with the owner, Mike Koratich. Ms. Blasioli testified:

> He wanted us, instructed us all to card and also told us that if we—if someone was in there underage and there was a problem that we were responsible for whatever action. Id. at 212.

¶ 13 Michael Montgomery testified to being with Mr. Superack on November 17, 2004 around 6:00 p.m. and giving him two methadone pills. Although Mr. Montgomery did not see Mr. Superack swallow the pills, he assumed he had. Mr. Montgomery stated that he and Mr. Superack then went to the home of a friend, Mike Wise, where he saw Mr. Superack and Mr. Wise snort white powder that had originally been in pill form. After the snorting incident, he and Mr. Superack drank beer with two other friends. Around 9:30 p.m., Mr. Seybold called Mr. Montgomery, who went with Mr. Superack to pick up Mr. Seybold and then go to the home of Mr. Montgomery's sister, where they did not drink alcohol or take drugs. Around 11:00 p.m., they proceeded to the Golden Rail, where they walked in without being carded. Mr. Montgomery averred that Mr. Superack was "tipsy" upon arrival at the Golden Rail, but "wasn't that bad … like he wasn't drunk, drunk." N.T., 1/22–24/07, at 317. Mr. Montgomery said that

he saw Mr. Superack drink a beer at the Golden Rail, but did not see him buy it, although Mr. Montgomery spent some of the time in the bathroom and talking on his cell phone with his girlfriend.

¶ 14 Brittney Kalakewich testified to be 18 years old on the evening of November 17, 2004 when Mr. Superack picked her up around 11:00 p.m. and, along with Mr. Seybold and Mr. Montgomery, drove to the Golden Rail. Ms. Kalakewich did not see any beer in Mr. Superack's car, did not see him drink while he was driving, and did not observe him take any alcohol into the Golden Rail. Although Ms. Kalakewich was only 18, she entered the Golden Rail that night and three or four times prior without being carded. She saw Mr. Seybold hand Mr. Superack a beer and although she was not certain, she thought that Mr. Superack had not "bought them himself." N.T., 1/22–24/07, at 343–344. Throughout the night she saw Mr. Superack and Mr. Seybold continue to drink. Ms. Kalakewich did not see who purchased the beer. As she was leaving the Golden Rail around 1:00 a.m. she saw Mr. Superack throwing up.

¶ 15 Kelli Bosworth was 18 years old on November 17, 2004 when, at around 8:00 p.m., she met up with Mr. Superack and some other friends at the home of Mike Wise. At that time, she saw Mr. Superack drinking beer from a can. She later went to the Golden Rail, where she entered without being carded. Mr. Superack and Mr. Seybold arrived at the Golden Rail after Ms. Bosworth, who observed them drinking beer. When Ms. Bosworth left the Golden Rail, she saw Mr. Superack throwing up.

¶ 16 Michael Wise testified to drinking beer with Mr. Superack at Mr. Wise's home in the afternoon and evening of November 17, 2004. Mr. Wise estimated that Mr. Superack drank a case of beer himself; he also stated that he, Michael Montgomery and Mr. Superack snorted methadone, cocaine and xanax. When Mr. Superack left at approximately 9:00 p.m., he took half a case of canned beer with him and "was pretty messed up." N.T., 1/22–24/07, at 500–501. Mr. Wise averred that Mr. Superack went to the Golden Rail to "get drunker." *Id.* at 502. In the past, Mr. Wise had been at the Golden Rail and drank, but he got the alcohol from a third party who had "got them" for Mr. Wise. *Id.* at 503, 505.

¶ 17 Pennsylvania state police officer Michael Hertig testified to arriving at the crash scene at 2:21 a.m. on November 18, 2004. Officer Hertig smelled alcohol but did not see any beer cans or containers of alcohol, nor did he see any evidence of illegal or controlled substances in the vehicle. However, in his investigation of the accident, Officer Hertig learned that Mr. Superack's blood alcohol level was in excess of .16.

¶ 18 Toxicologist Dr. Charles Winek testified that at 3:26 a.m. on November 18, 2004, Mr. Superack's blood alcohol content was .209. Dr. Winek noted that the alcohol level was diluted because Mr. Superack had vomited at the bar and at the crash scene, and that IV fluids administered by paramedics would have further diluted the level of alcohol in Mr. Superack's system. No drugs were detected in Mr. Superack's system, although a drug screen was not done for methadone.

¶ 19 Christina Sakai testified that she worked as a bartender at the Golden Rail from 1998 until 2003. Ms. Sakai stated that the policy of the Golden Rail was that minors "do not come in." N.T., 1/22–24/07, at 436, 441. As head bartender, Ms. Sakai trained other employees as to the policy and noted that Golden Rail employees were told that they would be responsible for fines if "something happens under our

watch"; employees were also told that they would be terminated for serving minors. *Id.* at 441, 446.

¶ 20 David Watson testified to working at the Golden Rail as a bartender from 1999 until 2003, and adhering to the Golden Rail's policy of not admitting or serving minors. Mr. Watson recalled a bartender being fired for serving a minor.

¶ 21 The testimony of Golden Rail bartender Jason Gregory was admitted into evidence. Mr. Gregory tended bar, along with Eric Bartlett, on the evening of November 17, 2004. Brant Blair was working the door. Mr. Watson did not notice underage patrons in the Golden Rail on the evening of November 17, 2004.

### Legal Analysis

■ ¶ 22 Appellant maintains that there was insufficient evidence to support the jury's verdict that the Golden Rail had violated 47 P.S. § 4–493(1) because no trial witness testified, nor was any evidence introduced, that any employee of the Golden Rail served Mr. Superack alcohol. Brief for Appellant at 8–9. We disagree.

¶ 23 The test for determining the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, and drawing all proper inferences favorable to the Commonwealth, the fact-finder could reasonably have determined all elements of the crime to have been established beyond a reasonable doubt. *Commonwealth v. Oliver*, 693 A.2d 1342 (Pa.Super.1997) *citing Commonwealth v. Syre*, 507 Pa. 299, 489 A.2d 1340 (1985). This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt. *Oliver, supra, citing Commonwealth v. Sullivan*, 472 Pa. 129, 371 A.2d 468 (1977); *Commonwealth v.*

*Farquharson*, 467 Pa. 50, 354 A.2d 545 (1976); *Commonwealth v. Cox*, 466 Pa. 582, 353 A.2d 844 (1976).

¶ 24 Although Appellant correctly avers that there is no direct evidence that Mr. Superack was served alcohol by an employee of the Golden Rail, the evidence is uncontroverted that Mr. Superack, who was 18 years old, was drinking alcohol on the premises of the Golden Rail on November 17–18, 2004. The plethora of circumstantial evidence, the majority of which came from the testimony of Mr. Superack's underage acquaintances who were also at the Golden Rail on November 17–18, 2004, could be construed by a jury to indicate that "an employe, servant or agent" of the Golden Rail "sold, furnished or gave" Mr. Superack alcohol. 47 P.S. § 4–493(1).

¶ 25 In furtherance of his sufficiency argument, Appellant avers that Mr. Seybold, who was 21 years of age, purchased the alcohol which he in turn gave to Mr. Superack. Brief for Appellant at 9. Appellant maintains that while "it is regrettable that an employee of the Golden Rail did not prevent this from happening, the failure to prevent it does not constitute the crime of furnishing alcohol to minors." *Id.* Appellant is wrong.

■ ¶ 26 A liquor licensee has a duty to see that adult patrons do not furnish alcoholic beverages to minors. *Com., Pennsylvania Liquor Control Bd. v. Mignogna*, 120 Pa.Cmwlth. 405, 548 A.2d 689 (1988) (under the liquor code, a licensee "permits" alcoholic beverages to be sold, furnished or given to a minor if the licensee acquiesces by failing to prevent the same); *Com., Pennsylvania Liquor Control Bd. v. Abraham*, 88 Pa.Cmwlth. 244, 489 A.2d 306 (1985) (liquor licensee did not properly carry out her duty to see that alcoholic beverages were not furnished to

minors where minors surreptitiously gained entrance to bar and had adult patron purchase beer and mixed drink for them). Given the foregoing, the jury need not have found that an employee of the Golden Rail served or sold alcohol directly to Mr. Superack in order to conclude that Appellant furnished Mr. Superack with alcohol in violation of 47 P.S. § 4–493(1). Accordingly, Appellant's conviction is supported by sufficient evidence.

¶ 27 Judgment of sentence affirmed.

¶ 28 Judge ORIE MELVIN Concurs in the Result.