J-S06030-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HAKEEM STANLEY | : | |
| | : | |
| Appellant | : | No. 1308 EDA 2020 |

Appeal from the PCRA Order Entered June 17, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0013370-2011

BEFORE:   PANELLA, P.J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED JULY 26, 2021**

Appellant Hakeem Stanley appeals from the order denying his timely first petition filed under the Post Conviction Relief Act[1] (PCRA).  Appellant argues that the PCRA court erred when it concluded that trial counsel was not ineffective.  Following our review of the record, we affirm on the basis of the PCRA court's opinion.

We adopt the PCRA court's summary of the facts underlying this matter. *See* PCRA Ct. Op., 6/17/20, at 1 (unpaginated).  Briefly, on October 28, 2013, a jury found Appellant guilty of first-degree murder, carrying a firearm without a license, carrying a firearm on public streets or public property in

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

Philadelphia, and possessing an instrument of crime.[2]  The trial court subsequently found Appellant guilty of persons not to possess firearms.[3]  That same day, the trial court sentenced Appellant to a term of life imprisonment without parole on the murder conviction and a consecutive term of five to ten years of incarceration on the persons not to possess firearms conviction. Sentencing Order, 10/28/13.  The trial court imposed no further penalty on the remaining charges.  *Id.*

Appellant did not file a post-sentence motion, and on November 11, 2013, Appellant filed a timely direct appeal.  On March 13, 2015, this Court affirmed Appellant's judgment of sentence.  *Commonwealth v. Stanley*, 3535 EDA 2013, 2015 WL 7458667 (Pa. Super. filed Mar. 13, 2015) (unpublished mem.).  Appellant filed a petition for allowance of appeal that was denied by our Supreme Court on October 26, 2015.

Appellant filed a timely *pro se* PCRA petition on August 5, 2016.  The PCRA court subsequently appointed counsel, and counsel filed an amended PCRA petition on November 25, 2017.  In the amended PCRA petition, Appellant asserted that trial counsel was ineffective for advising Appellant not to testify at trial, failing to call alibi witnesses, and failing to subpoena telephone records.  Am. PCRA Petition, 11/25/17, at 4-26.  The PCRA court held a hearing on August 14, 2019.  On June 17, 2020, the PCRA court filed

_____

[2] 18 Pa.C.S. §§ 2502(a), 6106, 6108, and 907(a), respectively.

[3] 18 Pa.C.S. § 6105.

- 2 -

an order denying Appellant's PCRA petition and an opinion in support of the order. Appellant filed a timely notice of appeal on July 2, 2020. The PCRA court did not direct Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

On appeal, Appellant raises the following issues for review:

1. Did the PCRA court err, denying Appellant his rights under the Sixth Amendment of the U.S. Constitution and Article 1, sec. 9 of the Pennsylvania Constitution when it found that trial counsel did not ineffectively advise Appellant not to testify on his own behalf?

2. Did the PCRA court err, denying Appellant his rights under the Sixth Amendment of the U.S. Constitution and Article 1, sec. 9 of the Pennsylvania Constitution when it found that trial counsel not ineffective for failing to adequately prepare for trial resulting in alibi and telephone evidence not being presented?

Appellant's Brief at 3 (some formatting altered).

Following our review of the record, the parties' briefs, and the well-reasoned conclusions of the PCRA court, we affirm on the basis of the PCRA court's opinion. *See* PCRA Ct. Op., 6/17/20, 1-24 (unpaginated). We agree with the PCRA court that Appellant has not established his claims of ineffective assistance of counsel. *See id.* Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/26/2021

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
TRIAL DIVISION – CRIMINAL SECTION

**FILED**

JUN 1 7 2020

PCRA Unit
CP Criminal Listings

COMMONWEALTH OF PENNSYLVANIA    :    CP-51-CR-0013370-2011

           v.

HAKEEM STANLEY

## ORDER

**AND NOW**, THIS 17TH DAY OF JUNE, 2020, PURSUANT TO THE POST-CONVICTION RELIEF ACT, 42 PA.C.S.A. § 9541, ET. SEQ., IT IS HEREBY **ORDERED** AND **DECREED** THAT FOLLOWING A REVIEW OF THE PETITION AND THE RECORD, THE PETITIONER'S PETITION FOR POST-CONVICTION RELIEF IS **DISMISSED.**

PETITIONER HAS THIRTY (30) DAYS FROM TODAY'S DATE IN WHICH TO FILE AN APPEAL FROM THIS DISMISSAL TO THE SUPERIOR COURT.[1]

BY THE COURT:

J. CARPENTER

---

[1] Any notice of appeal should be sent to 1301 Filbert Street, Criminal Justice Center, Suite 206, Philadelphia, PA 19107.

# IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## TRIAL DIVISION – CRIMINAL SECTION

COMMONWEALTH OF PENNSYLVANIA   :     CP-51-CR-0013370-2011

                v.                             :

HAKEEM STANLEY                      :

## OPINION

This Opinion is written in support of this Court's June 17, 2020 dismissal of Hakeem Stanley's PCRA petition.

## PROCEDURAL HISTORY

On October 22, 2013, Hakeem Stanley ("Stanley") elected to exercise his right to a jury trial and pled not guilty to Murder of the First Degree (H1), Carrying Firearms Without a License ("VUFA § 6106") (F3), Carrying Firearms on Public Property in Philadelphia ("VUFA § 6108") (M1), and Possession of Instrument of Crime ("PIC") (M1). On October 28, 2013, the jury found Stanley guilty of these charges. Following the jury verdict, the Commonwealth and Stanley stipulated to the fact that Stanley had the requisite predicate offense for a conviction under VUFA § 6105 and this Court entered a finding of guilt on that charge. At the conclusion of the trial, this Court sentenced Stanley to Life imprisonment without parole on the homicide charge and 5–10 years of imprisonment on the VUFA § 6105 charge, to run consecutively. He received no further penalty on the remaining charges.

On November 11, 2013, Stanley filed a Notice of Appeal to the Superior Court of Pennsylvania and, on March 13, 2015, the Court affirmed his convictions and judgment of sentence. Stanley filed a Petition for Allowance of Appeal to the Supreme Court of Pennsylvania, which was denied on October 26, 2015.

On August 5, 2016, Stanley filed the instant, timely PCRA petition. The matter was listed before this Court on March 10, 2017 and May 5, 2017 for status of counsel. On May 5, 2017 and August 4, 2017, PCRA counsel sought extensions to file an Amended Petition, which this Court granted. On November 25, 2017, counsel filed an Amended Petition raising several claims of ineffective assistance of trial counsel. On December 1, 2017, this Court continued the matter to March 16, 2018 for the Commonwealth's response. On March 16, 2018 and June 29, 2018, the Commonwealth sought extensions to file its response, which this Court granted. On October 9, 2018, the Commonwealth filed its Answer, in which the Commonwealth was unopposed to an evidentiary hearing on Stanley's claims of ineffectiveness of trial counsel and was unopposed to Stanley subpoenaing certain phone records related to the ineffectiveness claims. On October 19, 2018, this Court granted Stanley's request to subpoena the T-Mobile cell provider records from September 11, 2011 for Stanley's cell phone and Shaunta Byard's cell phone. On December 14, 2018 and February 8, 2019, this Court continued the matter for status of the outstanding T-Mobile cell phone records. On February 15, 2019, Stanley confirmed that T-Mobile did not have any records to produce in response to the subpoena. On April 5, 2019, counsel discussed availability for a hearing date and, on April 23, 2019, an evidentiary hearing was scheduled for August 14, 2019.

On August 14, 2019, this Court conducted an evidentiary hearing and continued the matter to October 11, 2019 for the parties to submit written post-hearing argument. On October 11, 2019, the Commonwealth submitted its post hearing brief and, on October 14, 2019, Stanley submitted his post-hearing brief. The matter was first listed before this Court for decision on November 22, 2019. On November 22, 2019, this Court continued the matter to January 24, 2020 for review of the record. On January 24, 2020, Court continued the matter to March 20, 2020 for further review of the record. On March 16, 2020, this Court sent Stanley a 907 Notice, pursuant to Pa.R.Crim.P. 907(1). This Court did not receive any response to the 907 Notice. On June 17, 2020, this Court dismissed the PCRA petition.

## DISCUSSION

The standard applied when reviewing an order dismissing a PCRA petition is whether the determination of the PCRA court is supported by the record evidence and is free of legal error.[1] The PCRA court's factual determinations are entitled to deference, but its legal determinations are subject to plenary review.[2] The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record.[3]

Pursuant to 42 Pa.C.S. 9545(b), a PCRA petition, including second and subsequent petitions, must be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that his claim(s) fall under any of the three enumerated exceptions to the one year requirement. These exceptions are

---

[1] Com. v. Hart, 911 A.2d 939, 941 (Pa. Super. 2006).
[2] Com. v. Hawkins, 894 A.2d 716, 722 (Pa. 2006).
[3] Com. v. Hart, 911 A.2d 939, 941 (Pa. Super. 2006).

interference by government officials[4], facts unknown and not discoverable by due diligence[5], and newly recognized constitutional rights that apply retroactively[6]. A petition claiming one of these exceptions must be filed within sixty (60) days of the time the claim could have been presented.[7] Further, the Pennsylvania Supreme Court set forth in *Commonwealth v. Fahy*[8] that "a claim of ineffective assistance of counsel does not save an otherwise untimely petition for review on the merits."[9]

In the instant matter, Stanley's PCRA Petition was timely filed and asserted various claims of ineffective assistance of trial counsel. Upon review of the record, the petition, and the submissions of counsel, this Court has determined that Stanley's claims are without merit.

Under the Post-Conviction Relief Act, claims of ineffective assistance of counsel are evaluated pursuant to the three-prong test set forth by the Pennsylvania Supreme Court in *Commonwealth v. Pierce*[10], using the same standard as when such claims are raised on direct appeal.[11] *Pierce* established that ineffectiveness claims are measured by both counsel's performance and the prejudice suffered by the petitioner.[12] The law presumes counsel to have been effective; thus, the petitioner bears the burden of establishing the following three prongs: first, that the ineffectiveness claim has arguable merit; second, that counsel's act or omission did not have a reasonable basis; and third,

---

[4] 42 Pa.C.S. 9545(b)(1)(i).
[5] 42 Pa.C.S. 9545(b)(1)(ii).
[6] 42 Pa.C.S. 9545(b)(1)(iii).
[7] 42 Pa.C.S. 9545(b)(2).
[8] 737 A.2d 214 (Pa. 1999).
[9] *Id.* at 223.
[10] 527 A.2d 973 (Pa. 1987).
[11] *Com. v. Kimball*, 724 A.2d 326 (Pa. 1999).
[12] *Com. v. Pierce*, 527 A.2d 973, 975 (Pa. 1987).

that the petitioner suffered prejudice on account of counsel's act or omission.[13] If it is apparent that the prejudice prong has not been met, the first two prongs of the test need not be determined.[14]

In assessing the *Pierce* prongs related to counsel's performance, counsel's error or omission "must have so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place."[15] Counsel inherently has broad discretion to determine the strategy employed, thus a review of counsel's act or omission must determine whether counsel's decisions were reasonably designed to benefit the client.[16] A finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued.[17]

In assessing the prejudice prong of *Pierce*, the petitioner must prove that he suffered prejudice on account of counsel's decisions. "Prejudice" can be described as whether, but for the arguably ineffective act or omission, there is a reasonable probability that the outcome would have been different.[18] In other words, the petitioner must establish that counsel's actions prejudiced him to such an extent that a *reliable* determination of guilt was not made at trial.[19]

---

[13] *Id.; see also Com. v. Breakiron,* 729 A.2d 1088, 1101 (Pa. 1999).
[14] *Com. v. Jones,* 683 A.2d 1181, 1188 (Pa. 1996).
[15] *Com. v. Hawkins,* 894 A.2d 716, 722 (Pa. 2006) (citing *Com. v. Allen.* 732 A.2d 582, 587 n.15 (Pa. 1999).
[16] *Com. v. Fowler,* 670 A.2d 153, 155 (Pa. Super 1996); *Com. v. Polston,* 616 A.2d 669, 677 (Pa. Super 1992).
[17] *Com. v. Howard,* 719 A.2d 233, 237 (Pa. 1998).
[18] *Com. v. Kimball,* 724 A.2d 326, 330 (Pa. 1999).
[19] *Com. v. Lassen,* 659 A.2d 999, 1011 (Pa. Super 1995).

### Claim 1 – Trial counsel ineffectively advised Petitioner not to testify on his own behalf

Stanley avers that counsel was ineffective for advising him not to testify on his own behalf at trial. This Court disagrees. Our courts have long recognized that the decision whether or not to testify rests solely with the defendant.[20] Such decision, however, is to be made after full consultation with counsel.[21] In order to prevail on a claim of ineffective assistance of trial counsel, the petitioner "must demonstrate either that counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf."[22] As such, where counsel's advice to a defendant to not testify is reasonable, counsel cannot be deemed ineffective.[23]

In the instant matter, trial counsel testified at the evidentiary hearing as to his strategy in making representations regarding defense testimony and his assessment of how the evidence had been presented to the jury at trial. Specifically, the transcript reflects the following:

> Q. Now, Mr. Stanley did not testify on his own behalf, correct?
> A. That's correct.
> Q. Did you and he discuss whether or not he should testify?
> A. Absolutely.
> Q. Do you have a specific recollection as you sit here today of having that discussion with him?
> A. I'm sure I did. I'm not specifically saying if we had the conversation. It's apparent from the transcript that there was a conversation between him and me before the court colloquized him.
> Q. But sitting here today you can't tell us what the substance of that conversation was?

---

[20] *Com. v. Wallace*, 500 A.2d 816, 819 (Pa. Super. 1985) (citing *Com. v. Rawles*, 462 A.2d 619, 624 n.3 (Pa. 1983)).
[21] *Com. v. Nieves*, 746 A.2d 1102, 1104 (Pa. 2000).
[22] *Com. v. Nieves*, 746 A.2d 1102, 1104 (Pa. 2000).
[23] *Com. v. Breisch*, 719 A.2d 352, 355 (Pa.Super.1998).

A. I can tell you from my training and experience the question was, you have heard the testimony. You saw the direct examination. You saw the cross-examination. He was extremely pleased with that. We discussed whether or not he should take the stand and the determination was made that he should not take the stand.

Q. Do you recall telling him that the cross-examination had gone in so well you didn't think it was necessary for him to testify?

A. I don't know whether or not I told him the cross-examination went so well. I said that the manner in which the case had gone in, meaning how it was developed, there was a good opportunity that the jury would believe that there was sufficient reasonable doubts. That's what I spoke to him about, yes.

Q. What testimony specifically had gone in so well that you felt confident enough that he didn't need to testify?

A. Well, in reviewing the transcript I think I laid out 31 reasonable doubts and that the jury had difficulty coming to a decision as you're well aware.

Q. And did you ever advise Mr. Stanley that his prior convictions could be used against him if he took the stand?

A. Absolutely not.

Q. Do you have a specific recollection as you sit here today of going through his criminal conviction record with him prior to making that decision?

A. I represented him prior to this case.

[. . .]

Q. Were any of Mr. Stanley's prior convictions crimen falsi?

A. Other than reviewing what I have reviewed and knowing what the transcripts and the prior documents revealed, I believe there is just one unauthorized use of an automobile, but that's only as a result of reviewing the transcript and the dockets prior to coming in here today.

[. . .]

Q. Prior to the trial beginning you had already made the determination that Mr. Stanley should not testify; is that correct?

A. That's absolutely incorrect.

Q. Well, did you tell the court prior to the trial that you didn't believe that Mr. Stanley would be testifying?

A. That was a belief.

Q. And what was that belief based on?

A. That probably a strategy in terms of I didn't want the prosecution to know whether he was or was not.

Q. So even if he was going to testify, you would always tell the court in advance he's not going to testify?

A. Possibility because the court also knows that at any time the individual can testify.[24]

---

[24] N.T. 8/14/2019 at 28-32.

This Court found trial counsel to be credible in his testimony and such testimony supports a finding that trial counsel's advice to Mr. Stanley was reasonable.

Further, this Court conducted an extensive colloquy of Stanley regarding his decision not to testify. For ease on review, this Court has included the relevant portion of the trial transcript as follows:

> THE COURT:] And so it becomes that point of the trial, Mr. Tinari, and I do know that before we had begun trial that you did let me know that you didn't anticipate that your client would exercise his right to testify, but this is the time where we now make that determination and I do ask those questions of Mr. Stanley.
>
> MR. TINARI: Thank you, Your Honor. The defendant and I have discussed this matter and he's prepared to be colloquized regarding his desires, Your Honor.
>
> THE COURT: All right. Mr. Stanley, you are sworn in. You were sworn in when we first arraigned you. So when I ask you these questions, you're under oath. Do you understand that?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: All right. Now, I believe that Mr. Tinari has told me that it will be your decision that you do not wish to testify. Is that accurate?
>
> THE DEFENDANT: Yes, it's accurate. I wish to use that right.
>
> THE COURT: To remain silent?
>
> THE DEFENDANT: Yes.
>
> THE COURT: All right. Now, will there be a request for that jury instruction, Mr. Tinari, that we generally give when a defendant exercises his right to remain silent? The jury instruction, I generally give it. Let me read it. It's right here. The jury instruction that we give, Mr. Stanley, if it's requested is the defendant's decision to remain silent. It is entirely up to a defendant in every criminal trial whether or not to testify. Defendant has an absolute right founded on the constitution to remain silent. You must not draw any inferences of guilt or any other inferences adverse to a defendant from the fact that he did not testify. Mr. Tinari, will there be a request to have that charge read?
>
> MR. TINARI: Yes, Your Honor.
>
> THE COURT: All right. And so, Mr. Stanley, do you understand that when you do exercise this right not to testify that there is that jury instruction that's given?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Okay. Now, I do have some questions for you to make sure that this is your decision and that you're doing it voluntarily and that nobody is forcing you into it. All right?
>
> THE DEFENDANT: Yes.

THE COURT: How old are you as you sit here today?

THE DEFENDANT: I'm twenty-nine.

THE COURT: And are you under the influence of any drugs, alcohol, any medications at all?

THE DEFENDANT: No, Your Honor.

THE COURT: And in the last week or so have you taken any medications?

THE DEFENDANT: No, Your Honor.

THE COURT: And have you ever been treated for any kind of mental health problems, anything that would affect your ability to understand anything that's going on here?

THE DEFENDANT: No, Your Honor.

THE COURT: Okay. Now, do you understand that you do have an absolute right to get on the stand and give testimony on your own behalf? Do you understand that?

THE DEFENDANT: Yes, I do, Your Honor.

THE COURT: And you, conversely, have an absolute right to remain silent and that I will read that instruction that I've told you. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Now, have you had a chance to speak to Mr. Tinari about what your rights are, what the implications are of all of it, and kind of get his advice as an attorney based on all of these things?

THE DEFENDANT: Yes, Your Honor. He's kept me well informed.

THE COURT: All right. But do you understand that in the end, this decision whether to get on the stand and testify or the decision to remain silent, that is a decision that is yours and yours alone? Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. Now, has anyone forced or threaten you in any way to get you to make this decision to remain silent?

THE DEFENDANT: No, Your Honor.

THE COURT: All right. Now, what will happen is my understanding is, Mr. Tinari, when the jury comes back tomorrow morning that the Commonwealth has already rested. I'll look to you and my understanding is is that you're going to rest.

MR. TINARI: That's correct.

THE COURT: And that there will not be any additional. I think you referred to exhibits, but I don't know if there were any exhibits that were actually admitted. I think I heard everything went through the Commonwealth's exhibits; is that right?

MR. TINARI: That is accurate. We had discussions about the preliminary hearing notes, but they were not identified nor moved into admission.

THE COURT: All right. And so there will be no witnesses, from what I understand, that will be presented on Mr. Stanley's behalf; is that right?

**MR. TINARI:** That is accurate, Your Honor. At the moment that we rest tomorrow, we'll be prepared to go forward with the Court's instructions concerning closings.

**THE COURT:** All right. And so, Mr. Stanley, do you understand that what Mr. Tinari is going to do, that he'll stand up, he'll rest, that the lawyers will move right into their closing arguments which will be your lawyer, Mr. Tinari, going first followed by the District Attorney? Do you understand that?

**THE DEFENDANT:** Yes, I do, Your Honor.

**THE COURT:** Now, were there any witnesses or any information that you had wanted Mr. Tinari to present on your behalf that it's your understanding that he will not present?

**THE DEFENDANT:** Oh, no. There's no witnesses, Your Honor.

**THE COURT:** Okay. Now, is there any further colloquy or questions from either counsel with regards to Mr. Stanley's rights to remain silent?

**MR. MACARTHUR:** No, Your Honor.

**MR. TINARI:** No, Your Honor.

**THE COURT:** I am satisfied that Mr. Stanley is exercising his right. He's doing it voluntarily and having an opportunity to discuss it with his lawyer, and that he has made this decision to remain silent. Now, Mr. Stanley, you have up until the time that Mr. Tinari starts with his, you know, says I rest to change your mind. I'm not suggesting that you should. I'm just letting you know that. But if you do change your mind, you need to tell Mr. Tinari before he says the words I rest. Do you understand that?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** Because if you don't and he says I rest and we move on to do the arguments, that your right to get on the stand and testify has been waived. Do you understand that?

**THE DEFENDANT:** Yes, Your Honor.[25]

In assessing the exchange between this Court and Stanley, this Court has relied upon the Superior Court holding in *Commonwealth v. Wallace*.[26] In *Wallace*, the defendant was given a much more abbreviated colloquy regarding the defendant's decision not to testify than that in the instant matter; however, the Court nonetheless determined that the defendant had "knowingly and voluntarily decided not to testify at trial."[27] Moreover, the *Wallace* Court noted that while "trial counsel urged his considered professional

---

[25] N.T. 10/23/2013 at 177-183.
[26] *Com. v. Wallace*, 500 A.2d 816, 819 (Pa. Super. 1985).
[27] *Com. v. Wallace*, 500 A.2d 816, 819 (Pa. Super. 1985).

opinion on his client, [the defendant] was apparently satisfied with this advice until the jury rendered an adverse verdict" and that "given the appellee's extensive juvenile record, it can hardly be said that he was naive or unfamiliar with the criminal justice system."[28] Akin to *Wallace*, Stanley had also had contact with the criminal justice system *in which he was previously represented by Mr. Tinari* and Stanley indicated during this Court's colloquy that Mr. Tinari had kept him "well informed" and that he did not wish to testify on his own behalf. Accordingly, upon review of the record and the relevant caselaw, this Court has determined that Stanley's decision not to testify on his own behalf was knowingly and voluntarily made and the instant claim of ineffective assistance of counsel lacks merit.

## Claim 2 – Trial counsel failed to adequately prepare for trial

Stanley asserts that his counsel was ineffective for his failure to adequately prepare for trial. He has identified four areas of alleged unpreparedness, discussed below, which constitute his claims of ineffectiveness. This Court has found that all of Stanley's claims lack merit.

### A. Time spent with Stanley before trial

The Pennsylvania Supreme Court has clearly opined that "by itself, the amount of time an attorney spends consulting with his client before trial is not a legitimate basis for inferring the total extent of counsel's pre-trial preparation, much less the adequacy of

---

[28] *Com. v. Wallace*, 500 A.2d 816, 819-20 (Pa. Super. 1985).

counsel's preparation."[29] The shortness of time which counsel spends consulting with his client does not alone establish ineffective assistance and petitioner bears the burden of proving his counsel's ineffectiveness, for counsel's stewardship is presumed to be effective.[30] Stanley claims that trial counsel only met with him one time prior to trial and that counsel was never available to accept his phone calls; however, the testimony from trial counsel at the evidentiary hearing refutes this assertion. Counsel knew Stanley and his family after having represented Stanley in other matters and described the relationship positively, further noting communication by telephone and letter. Specifically, trial counsel's testimony provided:

> There were many phone calls that Mr. Stanley made to the office that we had conversations. We had a good relationship, had a good relationship with the family. Asking me specifically what particular day and what month, I can't.
>
> [. . .]
>
> **BY MS. HIMEBAUGH:**
> Q. Do you have a specific recollection of having been on the phone with Mr. Stanley?
> A. Absolutely.
> Q. How many times prior to the trial?
> A. Many times.
> Q. Would you have any notes reflecting anything about those discussions?
> A. I don't have my file. If I had my file they may have some reflection of telephone conversations, but I normally don't do that. I don't write down every telephone call because I don't charge by the hour.
> Q. But would you write down the substance of the telephone calls?
> A. Sometimes I do and sometimes I don't.
> Q. Do you have any recollection of having written down anything substantive from any of the phone calls from Mr. Stanley?
> A. The answer is no. I do not have a specific recollection as to date or time and the length of time or conversations.
> Q. Now, were there occasions when Mr. Stanley called your office but he was unable to reach you and had to leave messages with your secretary?
> A. Probably that occurred, sure.

---

[29] *Com. v. Mason*, 741, A.2d 708, 715 (Pa. 1999) (citing *Com. v. Bundy*, 421 A.2d 1050, 1051 (Pa. 1980)).
[30] *Com. v. Thomas*, 539 A.2d 829, 837 (Pa. Super 1988).

**Q.** And would you get those messages?

**A.** I'm certain I would at the end of the day.

**Q.** And do you have a recollection of having received any letters from Mr. Stanley?

**A.** I'm sure he sent me letters.

**Q.** Do you have a recollection of having received any?

**A.** I don't have my file. If I had my file, I could certainly tell you if he sent the letters and my responses to his letters.[31]

Moreover, the record reflects that beyond the cross-examination of Commonwealth witnesses, trial counsel presented a defense witness, and litigated motion submissions by the Commonwealth. Trial counsel testified that approximately 90% of his practice is in homicide defense and counsel was very much aware of the applicable rules and procedures about which he was questioned in the course of his testimony. Having presided over both the trial and the instant PCRA proceeding, this Court determined that trial counsel was sufficiently prepared for trial and thus, Stanley's instant claim of ineffectiveness based on time spent before trial lacks merit.

### B. Trial counsel failed to timely give notice of an alibi defense and to interview/call Kareem Webb and Lauren Crawford as alibi witnesses

In order to establish that trial counsel was ineffective for failing to call a witness, the petitioner must demonstrate that (1) the witness existed; (2) the witness was available; (3) counsel knew of, or should have known of the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony was so prejudicial to petitioner to have denied him or her a fair trial.[32] With regard to an alibi witness, our courts have held that trial counsel's failure to call such witness is not

---

[31] N.T. 8/14/2019 at 21-23.

[32] *Com. v. Dennis.* 17 A.3d 297, 302 (Pa. 2011).

per se ineffective assistance of counsel.[33] Rather, the petitioner "must establish that defense counsel knew of the existence of the alibi witness and that the alibi testimony would have been beneficial to his or her case."[34] Ineffectiveness will not be found where there is a reasonable basis for counsel's decision based on a matter of trial strategy.[35] The courts of this Commonwealth have long held that weaknesses in an alibi, as presented by an alibi witness, would sustain a reasonable belief by counsel that its presentation would not have aided the defense at trial.[36]

The record from the evidentiary hearing supports a finding that trial counsel was never given the names of Kareem Webb or Lauren Crawford as persons who could present alibi testimony. Trial counsel testified that he was not given the names and that he knew the procedure for noticing alibi testimony as well as the potential for requesting that such evidence be permitted by the Court permit, even if untimely. Specifically, the direct examination of trial counsel at the evidentiary hearing provided as follows:

[BY MS. HIMEBAUGH]
Q. Would you consider an alibi an important defense to present if you have evidence of it?
A. If it's credible.[37]

[. . .]

Q. If you intend to assert an alibi defense, when must the alibi notice be filed in order for it to be timely?
A. Sure. If you're aware of a viable, truthful alibi witness, you must file it within the time period. I think at that time it was ten days. And if you don't have that information at that time, it becomes discoverable later on even prior to trial and ask leave of the court to permit to present an alibi in the interest of justice.[38]

[. . .]

[33] Com. v. Williams, 418 A.2d 499, 503 (Pa. Super. 1980) (citing Com. v. Owens, 312 A.2d 378, 381-382 (Pa. 1973) and Com. v. Olivencia, 402 A.2d 519, 523 (Pa. Super. 1979)).
[34] Com. v. Williams, 418 A.2d 499, 503 (Pa. Super. 1980).
[35] Com. v. Olivencia, 402 A.2d 519, 523 (Pa. Super. 1979).
[36] Com. v. Owens, 312 A.2d 378, 382 (Pa. 1973); Com. v. Olivencia, 402 A.2d 519, 523–24 (Pa. Super. 1979).
[37] N.T. 8/14/2019 at 13:7-9.
[38] N.T. 8/14/2019 at 14:14-23.

**Q.** Do you ever affirmatively ask the client when you first meet them, do you have any alibi witnesses?

**A.** Sure. We go through that entire list. Is there anybody there that can put you someplace else other than at the scene of the crime, yes or no? If yes, who is it? Where is it?[39]

[. . .]

**Q.** Have you ever failed to file a timely alibi notice?

**A.** Timely?

**Q.** Yes.

**A.** I may have.

**Q.** Do you have a specific recollection as you sit here today of having done so?

**A.** If a client who had requested and told me about an alibi witness that was credible and I failed, I would bring it to the court's attention at some point in time and then ask the court to permit me to call that witness, but I don't have any recollection of any alibi witness if I ever used one other than the couple times that I spoke to you about that a court denied me. I would have known that, denied the testimony.[40]

[. . .]

**Q.** Okay. Do you recall Mr. Stanley ever telling you that he wasn't even at the scene of the crime?

**A.** No.

**Q.** Do you recall Mr. Stanley telling you that he had an alibi that he was with Kareem Webb and Mr. Webb's fiancee Lauren Crawford?

**A.** Never gave me those names.

**Q.** Never gave you those names or you don't recollect he gave you those names?

**A.** Never gave me those names for any alibi.

**Q.** So you're absolutely positive you have the one recollection of this case and that was that he never gave you those names?

**A.** We're talking about an alibi and that's what you're asking me to refresh my recollection. He never gave me names of those two people as to being witnesses.[41]

[. . .]

**Q.** If you had been told say that Friday before the Monday about Kareem Webb and Lauren Crawford being alibi witnesses, could you have still gone to the judge and asked to allow them to be witnesses?

**A.** Absolutely.

**Q.** Would alibi evidence have possibly helped you establish that the Commonwealth had not proven Mr. Stanley's guilt beyond a reasonable doubt?

**A.** If credible and truthful.[42]

---

[39] N.T. 8/14/2019 at 15:19-24.
[40] N.T. 8/14/2019 at 16:10-24.
[41] N.T. 8/14/2019 at 24:8-23.
[42] N.T. 8/14/2019 at 27:8-16.

Trial counsel was clear in his understanding of the relevant procedure, he acknowledged the potential benefit of an alibi defense "if credible and truthful", and he credibly asserted that he was never provided the names of the two alibi witnesses that Stanley references in the instant petition.

While Stanley further presented his own testimony and the testimony of Kareem Webb and Lauren Crawford at the evidentiary hearing to support his ineffectiveness claim, this Court found such testimony to be wholly incredible. Mr. Webb and Ms. Crawford averred that they were available and willing to testify at the trial and, if called, would have testified that, on the day that Alonzo Dennis was shot and killed, Stanley had come to their house at 52nd Street and Harlan Street in the late afternoon. They further provided that between 6:00 p.m. and 7:30 p.m. the three of them walked to and from a soul food restaurant at 52nd Street and Girard Avenue to order and pick up their dinner. This testimony, even if believed, does not remove Stanley from the scene of the shooting, as Alonzo Dennis was shot outside of a deli at 52nd Street and Master Street shortly after 7:00 p.m. that evening.

Moreover, despite being close friends of Stanley and despite knowing that Stanley had been arrested for the murder of Alonzo Dennis even though he was purportedly with them at the time of the shooting, neither Mr. Webb nor Ms. Crawford made any attempt to give their version of events to the police or to trial counsel. Mr. Webb testified at the evidentiary hearing that he attended every day of the trial, except for the last day, and that he was present for this Court's ongoing discussions with Stanley and with trial counsel and heard them both indicate that no further witnesses would be called. Mr. Webb further testified that he was the person who *brought an*

*issue of witness sequestration to trial counsel's attention* in the middle of trial.

Specifically, the record from the evidentiary hearing provides:

> **THE COURT:** And I asked him questions about, in fact on the transcript there is four pages of it, and he stood up and told me there was no witnesses, that he didn't want to call anybody. And you didn't have a conversation with Mr. Tinari, who would be sitting right there where Ms. Himebaugh is, of why isn't somebody going to be calling him? You didn't have that conversation with Mr. Tinari right there?
> **THE WITNESS:** Ma'am, I don't know what conversations he had with --
> **THE COURT:** You're saying you didn't say anything to Mr. Tinari right then when you're sitting in the courtroom with your good friend and hear --
> **THE WITNESS:** I'm the one that pointed out to Mr. Tinari that the witness was sitting in the room, so if he called, if I was asked --
> **THE COURT:** Yeah, but you pointed out that that was the witness in the room, but you never pointed out to Mr. Tinari that you could put Mr. Stanley not at the scene of the crime.
> **THE WITNESS:** I would assume whatever conversations that he had with his lawyer would have been brought back to me. I've spoke to Hakeem to let Hakeem know. I didn't know I would have to speak to his lawyer about that. I would assume that that would be something that would be brought to my attention.
> **THE COURT:** But you would point out that there was a witness in the room that shouldn't be for sequestration? You point that out to Mr. Tinari, but not point out that you could put Mr. Stanley in a spot where he wasn't at the shooting?
> **THE WITNESS:** I assume he told his lawyer that I was a witness, ma'am. So if his lawyer did not contact me to bring me in for questioning the same way that way that this young lady's lawyer did, this young lady did, how would I know? I'm not a lawyer. I don't know what these proceedings and stuff is.[43]
>
> [. . .]
>
> **THE COURT:** So the conversation comes back to if you went through all of that why I'm sitting here, why wouldn't you tell Mr. Tinari that you have information? You had now sat through the witness who is saying he shot him at this time. Why wouldn't you tell Mr. Tinari at that time, hey, it couldn't have been him because he was with me? I don't understand why you wouldn't say that. If you would say that there was somebody in the courtroom that shouldn't be in the courtroom, why wouldn't you say, that couldn't be Mr. Stanley because he was with me? I don't understand why you wouldn't.
> **THE WITNESS:** Well, because if you blurt it out in the courtroom from my understanding --

---

[43] N.T. 8/14/2019 at 58-59.

**THE COURT:** Well, you blurted it out that there was somebody in the --

**THE WITNESS:** I didn't blurt it out.

**THE COURT:** Then why couldn't you have the same kind of conversation with Mr. Tinari about you being the person that could give him an alibi in the same manner that you said there was somebody in the courtroom that shouldn't be in the courtroom? I don't understand.

**THE WITNESS:** When I had the conversation and I said something to his mother and when we went outside and they had the break and we went outside, from my understanding Mr. Tinari knew he had some kind of witness. From whatever Mr. Tinari and his client, Hakeem Stanley, discussed or whatever their game plan was or whatever they were trying to do in that trial, I did not have no control over that. So as far as my understanding, he knew.[44]

Mr. Webb's explanation as to why he would alert trial counsel to the presence of a witness in violation of sequestration, but not alert trial counsel to having an alibi for Stanley was not credible to this Court. The trial record supports the fact that Mr. Webb was clearly able to convey important communications to trial counsel, as evidenced by trial counsel requesting a sidebar to address the sequestration issue and the subsequent Rule 104 hearing conducted by this Court. Accordingly, this Court has found his testimony regarding his inability to communicate with trial counsel unavailing.

Upon further questioning by this Court, Mr. Webb's testimony took a drastic shift seemingly because he realized that he was supposed to say that *he had told trial counsel* that he could provide alibi testimony for Stanley. Specifically, the record from the evidentiary hearing provides:

**THE COURT:** I understand. I'm just asking you, you never said anything to anyone except for when Ms. Himebaugh's investigator came to talk to you?

**THE WITNESS:** No, his lawyer -- from my understanding, his lawyer knew he had a witness beforehand.

**THE COURT:** No. I'm asking when you told anyone at any time, the only time you told anyone.

**THE WITNESS:** When we were all in the hallway, I told him that the witness was sitting inside of the room.

---

[44] N.T. 8/14/2019 at 84-88.

THE COURT: No. That you never told anyone that you could be an alibi for Mr. Stanley, the only time you told anyone was to Ms. Himebaugh's investigator?

THE WITNESS: No, that's not the only time. I just said when we were in the hallway.

THE COURT: When are the other times? What hallway?

THE WITNESS: After, before the recess, before you came -- before we came back in from break.

THE COURT: You told Mr. Tinari then that you were an alibi?

THE WITNESS: Yes, so you know we alibis, this and the third. Whatever he decided to do is whatever he decided to do.

THE COURT: So now that's different than what we heard before. So he's now saying not only did he talk about --

THE WITNESS: We never even got into a conversation about the hallway.

THE COURT: He's not -- okay. There is a conversation in the hallway that we haven't heard about, because the conversation about the sequestration of the witness happened in the courtroom. So you need to ask about when this conversation happened with Mr. Tinari.

MS. OSBORNE: Yes, Your Honor.

BY MS. OSBORNE:

Q. Mr. Webb, are you now saying that you did tell Mr. Tinari that you were an alibi witness?

A. We were in the hallway. After I pointed out the witnesses in the courtroom and his mother or whoever at the time, because I don't recall because it was like I said, you in the courtroom and you blurt up you can get locked up. So after she called break and the recess and we went out there and once again I said, hey, the guy Terrell, this that and the third, that's the guy that's one of the witnesses. Well, no, I'll make sure that I go back in there. Well, you know if you need me or Lauren, we're here.

Q. Oh, okay.

A. Well, I got this and I need this and it's too much reasonable doubt and this that and the third, and like I said, whatever he, now knowing this conversation once it goes back, he steps off to the side and he's talking to them, probably talking to Hakeem's mom about the witness and whatever he can do from there. That's the conversation that he had with his mom.

Q. Sir, don't say this that and the third. Specifically when you said, Me and Lauren are here if you need us, did you say because Hakeem was with me during the shooting?

A. Yes. If you need me, if you need us, we were here. He was with us. If you need us, we're here. So if you need us to go on the stand, we're here because he was with us.

Q. And is that the first time you said that to Mr. Tinari?

A. Yes.

Q. And what did he say to you?

A. I got this in the bag. He's too much -- something about too much reasonable doubt and this that and third. Sorry, I didn't mean to say this,

that and the third. He said it's too much reasonable doubt within this case, that I have this.

Q. And why didn't you tell that to Her Honor on direct examination or in your affidavit?

A. What do you mean direct examination?

Q. This is the first time we're hearing about this conversation, so I'm confused why you didn't tell Teri that on direct, why you didn't tell the judge that in your affidavit. This is the first time we're hearing about this conversation.

A. Because in the affidavit they were asked to explain my night, what me and him were doing that day. I wasn't asked any questions that what I'm being asked right now.

Q. But it's fair to say you did bring up the sequestration in your affidavit?

A. What is a sequestration? Can you explain that to me? I don't know what --

Q. The part where you said that there was a witness in the courtroom.

A. Yes.

MS. OSBORNE: Okay. No further questions.[45]

Mr. Webb's testimony rapidly transpired from him believing that trial counsel knew about his alibi testimony and not being able to alert counsel of his availability and willingness to testify to asserting that he directly told trial counsel about his alibi for Stanley out in the hallway during trial. Having heard this progression of testimony and assessing the candor of the witness, this Court found Mr. Webb's account of events to be wholly incredible.

Finally, Stanley testified about being with Mr. Webb and Ms. Crawford on the night that Alonzo Dennis was fatally shot outside of the deli at 52nd Street and Master Street. Akin to the testimony of Mr. Webb and Ms. Crawford, Stanley's own testimony did not remove him from the area of 52nd Street and Master at the time of the shooting, as his account also placed him in the vicinity of the deli while walking to and from a restaurant to order and pick up dinner. Stanley indicated that he had told trial counsel about Mr. Webb, but not Ms. Crawford; however, such claim is unsupported by the

---

[45] N.T. 8/14/2019 at 82-83.

record. The colloquy from the trial indicates that Stanley knowingly made his decision to not call any further witnesses for the defense and Stanley's own *pro se* PCRA petition initiating the instant proceeding made no mention of Mr. Webb and/or Ms. Crawford. In consideration of the testimony presented at the evidentiary hearing and the full record in this matter, this Court has determined that Stanley has failed to establish the performance related prongs of *Pierce* and, as such, this Court need not address any alleged prejudice. Accordingly, Stanley's claim of ineffectiveness related to trial counsel's failure to call Mr. Webb and Ms. Crawford as witnesses does not warrant relief and must be dismissed.

### C. Trial counsel failed to subpoena the cell phone records of Petitioner and Shaunta Byard

Stanley avers that trial counsel's failure to subpoena his cell phone records and those of Shaunta Byard was ineffective assistance because the Commonwealth's case against him "hinged on establishing his alleged motive" for shooting Alonzo Dennis and, therefore, presenting the jury with the absence of cell phone communication between Stanley and Byard would have weakened the Commonwealth's case and the jury verdict would have been different. Given the body of evidence presented at trial, this Court finds Stanley's averments unpersuasive in its assessment of the purported prejudice suffered on account of trial counsel's performance and/or decision, as required by *Pierce*.

Our Supreme Court has long held that the determination of "prejudice" is whether, but for the arguably ineffective act or omission, there is a reasonable

probability that the outcome would have been different.[46] In other words, the petitioner must establish that counsel's actions prejudiced him to such an extent that a *reliable* determination of guilt was not made at trial.[47] Here, the Commonwealth established the familial relationship between Stanley and Byard and the events leading to the altercation between Byard and Dominick Simpson on September 11, 2011. As stated by this Court in its 1925(a) Opinion:

> The testimony of Tyrell Herbin and Dominic Simpson established that Simpson had been arguing with Herbin's neighbor, Shaunta Byard. Initially, Byard yelled at Herbin's son, Quamir, to stop fighting with her son because if he didn't, she would call her son's older cousins to come and rough him up. Simpson responded to Byard's comment by stating that Quamir had cousins too. The argument continued with Byard stating that she would "get somebody to fuck him up" and Simpson responding that he would "get his girl to fuck her up."[48] Shortly thereafter, Herbin, his son Quamir, Simpson and [Alonzo] Dennis walked up Harlan Street to the deli at 52nd and Master Street and saw Stanley – Byard's cousin – walking toward Byard's house on the other side of the street. The men went into deli, purchased beer, exited, and as they were leaving Herbin peripherally saw an arm raise up to the back of Dennis' head and heard the shot. Dennis immediately dropped to the ground and Herbin and Simpson saw Stanley run up Master Street toward 53rd Street. Both Herbin and Simpson gave statements to police and identified Stanley as the shooter.[49]

The Commonwealth further presented the jury with a YouTube video establishing evidence of motive. The video portrayed Stanley rapping and, most poignantly, talking about his rap career and the change it had made in his life. The relevant portion of the video that was played for the jury was read into the record by the prosecutor, as follows:

> *It's, quote:* If you wanna rap, go ahead and rap and do everything you're supposed to do. But if you wanna be out here on the streets, I don't want to do this shit. Do you feel what I'm saying? Running up and down these streets doing all this shit. If you still want to be out here, you might as well delete your Twitter and just go run around shooting niggas, beating niggas

---

[46] *Com. v. Kimball*, 724 A.2d 326, 330 (Pa. 1999).
[47] *Com. v. Lassen*, 659 A.2d 999, 1011 (Pa. Super 1995).
[48] N.T. 10/22/2013 at 200:16-18.
[49] April 1, 2014 1925(a) Opinion at 11.

up, taking shit from niggas. You know what I'm saying? The shit touched me so I felt like this is the change. Do you feel what I'm saying? For Kill Keem.

*And then his friend says*: But don't get it fucked up.

*And the defendant says, quote*: Don't get it fucked up. Don't get it fucked up. Because if you try to harm me or anyone in my family or stop me from getting my money, like, feel me, I'm still him but I'm smart now.[50]

Stanley's own words illustrated that he was moving on from the street life in pursuit of his rap career; however, he made it explicitly clear that if someone were to harm him or his family or prevent him from getting him from getting his money, he was still that person involved in the street life. These words were extremely probative in the instant case, as the shooting at issue stemmed from an earlier series of threats exchanged between Simpson and Byard – Stanley's cousin – and an earlier scuffle between Byard's son and Quamir. Moreover, the Commonwealth established that the video was uploaded to YouTube on September 17, 2011, which was six days after the murder of Alonzo Dennis.

While Stanley avers that the potential for trial counsel to have been able to show an absence of communication between Stanley and Byard during the relevant time period would have changed the outcome, this Court cannot agree. The Commonwealth presented multiple eyewitness accounts of the initial altercation between Simpson and Byard, established the familial connection between Stanley and Byard, presented video footage of Stanley himself saying that he was moving on from the street life, but that "if you try to harm me or anyone in my family or stop me from getting my money, like, feel me, I'm still him but I'm smart now" which was put on the internet only days after the

---

[50] N.T. 10/21/2013 at 216-217.

shooting, and presented two eyewitness identifications of Stanley as the shooter. Despite trial counsel's tremendous effort to outline points of reasonable doubt for the jury, the overwhelming body of evidence demonstrated Stanley's guilt. Moreover, the fact that Stanley coincidentally did not preserve any of his own cell phones showing this proffered absence of communication diminishes the authenticity of his argument. As such, this Court has determined that Stanley failed to show that trial counsel's failure to subpoena phone records prejudiced him to such an extent that a *reliable* determination of guilt was not made at trial.

## CONCLUSION

Based upon this Court's independent review of the record, the petition, and the submissions of counsel, this Court concludes that Stanley's claims do not warrant relief.

_____
Carpenter, J.

**First Judicial District of Pennsylvania**
**Honorable Linda A. Carpenter**
**294 City Hall**
**Philadelphia, PA 19107**

Commonwealth v. Hakeem Stanley
CP-51-CR-0013370-2011

Date: June 17, 2020

## PROOF OF SERVICE

I hereby certify that I am this day serving the foregoing upon the person(s), and in the manner indicated below, which service satisfies the requirements of Pa. R. Crim. P. 114:

Defense Counsel/Party:   Hakeem Stanley / MU-4853
SCI-Coal Township
1 Kelley Drive
Coal Township, PA 17866

Teri B. Himebaugh, Esq.
1400 Spring Garden Street, #911
Philadelphia, PA 19130

Type of Service: ( ) Personal   ( X ) First Class Mail   ( ) Other, please specify: _____

District Attorney:   PCRA Unit
District Attorney's Office
Three South Penn Square
Philadelphia, PA 19107

Type of Service: ( ) Personal   ( X ) First Class Mail   ( ) Other, please specify: _____

Janet Brinkman